# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------x

DISNEY ENTERPRISES, INC; WONDERLAND
MUSIC COMPANY, INC.; CAMERON
MACKINTOSH LTD.; MARVEL CHARACTERS,
INC.; and MUSIC THEATRE INTERNATIONAL,
LLC,

$\qquad$ Plaintiffs,          Case No: 5:13-cv-05570 (JSL)

$\qquad$ -against-

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE; JAMES D.
MARTIN; FREDERICK W. STEUDLER, JR.;
and DWIGHT H. BRUBAKER,

$\qquad$ Defendants.

-----------------------------------------------------------------x

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

$\qquad$ Counterclaim- Plaintiff,

$\qquad$ -against-

DISNEY ENTERPRISES, INC.; and
MARVEL CHARACTERS, INC.,

$\qquad$ Counterclaim-Defendants.

-----------------------------------------------------------------x

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

$\qquad$ Third-Party Plaintiff,

$\qquad$ -against-

STAN LEE MEDIA, INC.,

$\qquad$ Third-Party Defendant.          **DEMAND FOR JURY TRIAL**

### THIRD-PARTY COMPLAINT OF AMERICAN MUSIC THEATRE AGAINST THIRD-PARTY DEFENDANT STAN LEE MEDIA, INC.

Third-Party Plaintiff American Music Theatre ("AMT"), by its undersigned counsel, hereby brings this Complaint against Third-Party Defendant Stan Lee Media, Inc. ("SLMI"), and in support thereof avers as follows:

1.     All terms not defined herein shall have the same meanings given to them in the AMT Defendants' Answer with Affirmative Defenses and Counterclaims, and are hereby incorporated by reference.

2.     AMT is a Pennsylvania partnership organized and existing under Pennsylvania law.

3.     SLMI is a citizen of the State of Colorado.

4.     The Court has jurisdiction over this third-party complaint pursuant to 28 U.S.C. § 1331 as the underlying action is one for violations of the Lanham Act, Title 15 U.S.C. § 1125, *et seq., pursuant* to 28 U.S.C. § 1332, as AMT and SLMI are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, and/or supplemental jurisdiction over the claims under 28 U.S.C. § 1367(a).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in the underlying action occurred in this district and the underlying Lanham Act case is venued and currently pending in this district

6.     In the underlying Complaint, Disney alleges that its MCI entity is the owner of various copyrights and trademarks regarding Spider-Man.  However, SLMI has represented to AMT that SLMI, not Disney or Disney's MCI entity, is the owner of the copyrights and trademarks regarding Spider-Man.

7.      AMT is the holder of a written license from SLMI granting AMT the exclusive license to use Spider-Man and all copyrights and trademarks associated therewith in connection with the *Broadway: Now and Forever* production and in connection with future stage and theatrical productions, at the time of the alleged infringements set forth in the Complaint and going forward.

8.      Upon information and belief, in October 1998, Lee, the creator of Spider-Man, assigned in writing to SLEI, SLMI's corporate predecessor-in-interest, all of Lee's copyright, trademark and other intellectual property interests in all characters and works that Lee had created (or would create in the future), including Spider-Man and the assignment was contained in a written agreement signed by Lee (individually and on behalf of SLEI) by a SLEI company representative (the "Recorded, First-In-Time, SLMI Copyright Assignment"). A true and correct copy of the Recorded, First-In-Time, SLMI Copyright Assignment is attached as Exhibit A to AMT's Answer, Affirmative Defenses and Counterclaims and is incorporated herein by reference.

9.      Upon information and belief, (a) in or about April 1999, SLEI merged into and transferred all of its rights and interest to a Delaware corporation, namely, SLMI-DE, (b) in or about July 1999, SLMI-DE consummated a merger into, and transferred all of its rights and interests (including the rights transferred from SLEI), to a publically owned Colorado corporation, BCOI, and (c) subsequently, BCOI was renamed Stan Lee Media, Inc., a Colorado corporation.

10.     Upon information and belief, (a) in October 1999, Lee signed a written agreement amending, modifying and confirming the validity of the Recorded, First-In-Time, SLMI Copyright Assignment ("the SLMI Copyright Amendment"), (b) the SLMI Copyright

Amendment and the Recorded, First-In-Time, SLMI Copyright Assignment were publically filed

with the United States Securities and Exchange Commission in March 2000, as part of a form

10KSB also signed by Lee as SLMI's Chairman of the Board.  A true and correct copy of the

SLMI Copyright Amendment is attached as Exhibit B to AMT's Answer, Affirmative Defenses

and Counterclaims and is incorporated herein by reference.

11.     Upon information and belief, on December 16, 2000, Lee, SLMI's Chairman of

the Board, confirmed in writing that all he had created in the past and would create in the future

belonged to SLMI.

12.     Upon information and belief, (a) on November 28, 2006, the Recorded, First-In-

Time, SLMI Copyright Assignment was publically recorded with the United States Copyright

Office, in Volume 3544, as Document No. 426 and (b) the recordation, among other things,

specifically lists a transfer of ownership of copyrights in Spider-Man, and other Lee-created

characters such as The Incredible Hulk, X-Men, Fantastic Four, Iron Man, Daredevil, Silver

Surfer, Dr. Strange and Stan Lee Presents.  True and correct copies of the United States

Copyright Office's Certificate of Recordation, along with the recorded documents, are attached

as Exhibit C to AMT's Answer, Affirmative Defenses and Counterclaims and is incorporated

herein by this reference.

13.     Upon information and belief, (a) in November 1998, Lee signed a written

agreement with Marvel Enterprises, Inc. in which he purportedly provided Marvel with a

"conditional assignment" of certain rights in Spider-Man and other Lee-created characters (the

"Unrecorded, Second-In-Time, Marvel-Disney Copyright Assignment") but (b) Lee no longer

owned the rights set forth in the Unrecorded, Second-In-Time, Marvel-Disney Copyright

Assignment because those rights had been previously assigned by Lee to SLEI (SLMI's

4

corporate predecessor) and, therefore, (c) the Unrecorded, Second-In-Time, Marvel-Disney Copyright Assignment actually assigned nothing to Marvel-Disney.

14.     Upon information and belief, (a) The Walt Disney Company ("TWDC") closed on its purchase of Marvel on December 31, 2009 (the "Disney-Marvel Purchase"), (b) prior to the Disney-Marvel Purchase, Marvel had never publically recorded its Unrecorded, Second-In-Time copyright assignment, (c) prior to the Disney-Marvel Purchase, Marvel had never publically filed its Unrecorded, Second-In-Time copyright assignment with the United States Securities and Exchange Commission, (d) pursuant to the Disney-Marvel Purchase, TWDC succeeded to Marvel's purported intellectual property interests under the Unrecorded, Second-In-Time, Marvel-Disney Copyright Assignment, (e) subsequent to the Disney-Marvel Purchase and continuing to date, neither TWDC nor its Marvel subsidiaries have ever publically recorded the Unrecorded, Second-In-Time, Marvel-Disney Copyright Assignment with the United States Copyright Office and (f) subsequent to the Disney-Marvel Purchase and continuing to date, neither TWDC nor its Marvel subsidiaries have ever publically recorded the Unrecorded, Second-In-Time Marvel-Disney Copyright Office with the United States Securities and Exchange Commission.

15.     Upon information and belief, during the past decade, there have been a number of cases filed and pursued involving SLMI, Lee, TWDC, Marvel and others.  Various pieces of that litigation occurred in New York, California and Colorado.  A summary of that litigation is set forth below.  However, even assuming that each of the prior rulings in prior litigation is effective (and some are no longer effective), none of those rulings limit or affect in any sense AMT's third party claims.

16.    Upon information and belief, the Colorado litigation took place from 2007 to 2011 and was a corporate governance dispute.  The allegations in that corporate governance litigation included, among other things, that SLMI and approximately 1800 shareholders should be freed from the adverse domination, control and self-dealing of the prior management/shareholder group involving, among others, Lee (the "Prior Control Group").  On May 27, 2010, the Court of Appeals of the State of Colorado issued a ruling that had the effect of authorizing a new board of directors, independent of Lee and the Prior Control Group, to act as SLMI's legally authorized representative to, among other things, recover SLMI's assets and to enforce SLMI's copyright ownership rights and other intellectual property rights (the "Corporate Governance Ruling").

17.    Upon information and belief, on October 2010, the Supreme Court of the State of Colorado denied a certiorari petition, filed by Lee on behalf of the Prior Control Group, seeking permission to appeal from the Corporate Governance Ruling.

18.    Upon information and belief, in November 2010, the Court of Appeals of the State of Colorado issued its mandate, returning jurisdiction over SLMI's corporate governance to the District Court of the State of Colorado.

19.    Upon information and belief, in January 2011, the District Court of the State of Colorado issued an order implementing and formally seating the new board of directors, independent of Lee and the Prior Control Group, as SLMI's legally authorized representative.

20.    Upon information and belief, the first New York litigation in the United States District Court for the Southern District of New York, 09 Civ. 0715 (PAC) was a legally unauthorized, putative, shareholder derivative lawsuit purportedly filed on behalf of "SLMI" against Marvel Entertainment, Lee and others (the "Legally Unauthorized Putative Derivative

Case"). In the Legally Unauthorized Putative Derivative Case, the legally unauthorized putative derivative plaintiffs sought relief solely in connection with three post-1998 characters created by Lee for SLMI, to wit: The Accuser, The Drifter and Stan's Evil Clone. In the Legally Unauthorized Putative Derivative Case, the legally unauthorized putative derivative plaintiffs did not assert any claims for relief regarding Spider-Man or any other pre-1998 characters created by Lee.

21.    In the Legally Unauthorized Putative Derivative Case, The Honorable Paul A. Crotty found, on March 30, 2010, that the putative derivative plaintiffs did not have standing to bring any claims on behalf of "SLMI" and were not authorized to sue on behalf of "SLMI." However, Judge Crotty also stated that the putative derivative claims set forth in an amended complaint filed in April 2009 were time-barred under California state law, without addressing the separate, distinct and independent federal statute of limitations for a copyright claim under the Copyright Act [17 U.S.C. 507(b)].

22.    Upon information and belief, a second piece of litigation in the United States District Court for the Southern District of New York was brought by Lee against various Marvel entities, 02 Civ. 8945 (RWS) (the "Lee-Marvel Case"). That litigation itself was in two parts. In the first part, Lee filed a complaint on November 12, 2002, seeking certain contract damages, in which Lee asserted that he was the owner of Spider-Man and his other character creations, prior to his November 1998 "conditional assignment" to Marvel (to wit: the Unrecorded, Second-In-Time, Marvel-Disney Copyright Assignment). The Lee-Marvel Case was ultimately settled and a Stipulation and Order closing the same was entered on April 27, 2005.

23.    Upon information and belief, in July 2010, SLMI's newly authorized and independent board of directors became concerned that efforts may have been made in the closed

Lee-Marvel Case attempting to compromise SLMI's rights while SLMI was adversely

dominated by Lee and the Prior Control Group. Therefore, in July 2010, SLMI's newly

authorized and independent board of directors, out of an abundance of caution, sought to

intervene in, and vacate the 2005 closing of, the Lee-Marvel Case.

24.     Upon information and belief, the Request to Intervene and to vacate the 2005

Order closing the Lee-Marvel Case was denied on the grounds that SLMI's intellectual property

rights were not involved therein. In the Order of Denial, the District Court also stated that the

time-bar ruling in the Legally Unauthorized Putative Derivative Case bound SLMI under the *res

judicata* doctrine.

25.     Upon information and belief, on March 21, 2012, the United States Court of

Appeals for the Second Circuit (a) affirmed the District Court's decision denying the Request to

Intervene and to vacate the 2005 closing of the Lee-Marvel Case and (b) expressly held that it

would not reach, and therefore chose not to affirm, the District Court's *res judicata* ruling. Thus,

the District Court's statements about the preclusive effect of the time-bar ruling in the Legally

Unauthorized Putative Derivative Case against SLMI were rendered null and void, and SLMI

was thereby freed by the Second Circuit's decision to proceed with litigation against Marvel-

Disney in seeking to vindicate SLMI's rights under the Recorded, First-In-Time, SLMI

Copyright Assignment.

26.     Upon information and belief, from approximately February 16, 2001 to a

dismissal order issued on approximately November 14, 2006, Lee and the Prior Control Group

pursued a Chapter 11 bankruptcy case for SLMI in the United States Bankruptcy Court for the

Central District of California. During the bankruptcy, Lee and the Prior Control Group failed to

notify approximately 1800 SLMI shareholders about the bankruptcy or to afford them an

opportunity to protect their interest in SLMI and SLMI's assets.  On or about January 9, 2007,

Lee commenced a lawsuit in the United States District Court for the Central District of

California, 07-CV-225 (SVW), on behalf of himself, and as a shareholder in a putative derivative

case on behalf of SLMI, seeking a determination, among other things, of intellectual property

rights in various assets (the "2007 Case").  Subsequently, two other putative shareholder

derivative cases were filed on behalf of SLMI in the California District Court and were assigned

to the same District Judge handling the 2007 Case (the "Related Cases").

27.    Upon information and belief, on January 20, 2009, the California District Court

issued a partial summary judgment ruling that (a) neither Lee, nor his post-SLMI entertainment

companies, had legally acquired any ownership rights in SLMI's intellectual property assets

during SLMI's bankruptcy, (b) Lee and others had violated the automatic stay during SLMI's

bankruptcy in seeking to take intellectual property assets away from SLMI without the approval

of the bankruptcy court and (c) other proceedings in the Related Cases were stayed, pending the

outcome of the Corporate Governance Litigation in Colorado.  Those merits determinations,

which redound to the benefit of SLMI, are final and unappealable.

28.    Upon information and belief, in January and February 2011, the United States

District Court for the Central District of California issued orders (a) consolidating the Related

Cases, and designating the 2007 Case commenced by Lee, on behalf of SLMI and himself, as the

lead case, (b) realigned SLMI as a plaintiff in the 2007 Case, now that SLMI was acting through

a new legally authorized representative (independent of Lee and the Prior Control Group) by

virtue of the Colorado Corporate Governance Ruling and (c) authorized SLMI to file a complaint

in the 2007 Case against Lee and his post-SLMI entertainment companies POW! Entertainment

and QED Productions as realigned defendants.

29.     Upon information and belief, on August 23, 2012, the United States District Court for the Central District of California (07-CV-225-SVW) consolidated with Case Nos. 07-CV-4438-SVW and 09-CV-2340-SVW) granted a pre-answer motion to dismiss the Related Cases by according *res judicata* effect to the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case, without addressing the legal effect of the Second Circuit's subsequent disaffirmance on March 21, 2012.  SLMI has appealed that ruling to the United States Court of Appeals for the Ninth Circuit.  Significantly, the California District Court ruling does not adjudicate the merits of SLMI's position that SLMI is the legal owner of Spider-Man (and other pre-1998 Lee created characters) under the Recorded, First-In-Time, SLMI Copyright Assignment.  Neither the Marvel-Disney Plaintiffs in the underlying case, nor TWDC, were a party to the Related Cases.

30.     Upon information and belief, and in reliance upon the Second Circuit's appellate ruling on March 21, 2012 divesting the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case from having preclusive effect against SLMI, on October 9, 2012 SLMI filed a single-count case for copyright infringement against TWDC in the United States District Court for the District of Colorado, 12-CV-2663-WJM-KMT (the "Colorado Case"), solely seeking relief for the three year period preceding the commencement of the Colorado Case and thereafter.

31.     Upon information and belief, the Colorado District Court denied TWDC's motion to stop SLMI from taking a videotaped deposition of Lee, even though Lee is now over 90 years of age as well as a central witness in the unadjudicated ownership rights dispute between SLMI and Disney.

32.     Upon information and belief, on September 5, 2013 the Colorado District Court granted TWDC's pre-answer motion to dismiss the Colorado Case by according issue preclusion effect (not *res judicata* effect) to the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case, without addressing the legal effect of the Second Circuit's subsequent disaffirmance on March 21, 2012. SLMI has appealed that ruling to the United States Court of Appeals for the Tenth Circuit, which has scheduled a multi-hour, confidential, mediation conference for November 7, 2013. Significantly, the Colorado District Court ruling does not adjudicate the merits of SLMI's position that SLMI is the legal owner of Spider-Man (and other pre-1998 Lee created characters) under the Recorded, First-In-Time, SLMI Copyright Assignment. Also, the Colorado District Court ruling does not adjudicate the merits of SLMI's position that, pursuant to the continuing infringement doctrine under federal copyright law, SLMI is entitled to enforce its ownership rights under the Recorded, First-In-Time, SLMI Copyright Assignment for all Disney infringements taking place subsequent to the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case.

**COUNT I- Declaratory Judgment of Ownership of Spider-Man Character**

33.     AMT incorporates by reference all of the allegations in paragraphs 1 through 32, inclusive as though set forth in full.

34.     In the underlying Complaint, Disney alleges that its MCI entity is the owner of various copyrights and trademarks regarding Spider-Man and argues that AMT has, among other things, engaged in trademark and copyright infringement via AMT's use of the Spider-Man character in connection with its *Broadway: Now and Forever* theatrical production.

35.    However, pursuant to a license agreement between SLMI and AMT, SLMI represented to AMT that SLMI is the legal owner of all copyrights in the Spider-Man character and all intellectual property rights arising therefrom.

36.    Under this agreement, SLMI and AMT have entered into a valid and legally enforceable license granting AMT the exclusive right to use Spider-Man at the times, and in the manner, for which the Marvel-Disney Plaintiffs complain in their claims for relief in the Complaint, namely, use in connection with the sale, offering for sale, advertising, performance and promotion of *Broadway: Now and Forever* (the "SLMI-AMT Spider-Man License").

37.    Upon information and belief, the facts indicate that SLMI, not Disney or Disney's MCI entity, is the owner of the copyrights and trademarks regarding Spider-Man.

38.    If SLMI is not the owner of the copyrights and trademarks regarding Spider-Man, SLMI will be in breach of the license agreement entered into between it and AMT.

39.    Pursuant to the foregoing, as well as the Federal Declaratory Judgment Act under 28 U.S.C. 2201 and 2202, AMT respectfully requests that (a) the Court issue a declaratory judgment that, among other relief, (1) SLMI is the owner of Spider-Man under the Recorded, First-In-Time, SLMI Copyright Assignment, (2) AMT is the owner of a valid and legally enforceable exclusive Spider-Man license from SLMI and (3) pursuant to the SLMI-AMT Spider-Man License, neither AMT nor any of the other AMT Defendants has any liability to MCI (or the other Marvel-Disney Plaintiffs) for AMT's use of Spider-Man and (b) the Court issue appropriate injunctive relief in enforcement of the foregoing declaratory judgments.

**COUNT II- Declaratory Judgment of Ownership of Non Spider-Man Characters**

40.    AMT incorporates by reference all of the allegations in paragraphs 1 through 39, inclusive as though set forth in full.

41. SLMI has represented pursuant to the license agreement between it and AMT that SLMI is the owner of all copyrights in all characters created by Stan Lee.

42. If SLMI is not the owner of the copyrights and trademarks regarding the Non Spider-Man Characters, SLMI will be in breach of the license agreement entered into between it and AMT.

43. Pursuant to 17 U.S.C. 205(d), the Recorded, First-In-Time, SLMI Copyright Assignment is legally superior to, and legally defeats, the Unrecorded, Second-In-Time Marvel-Disney Copyright Assignment with respect to all other Stan Lee created characters and works, including but not limited to Iron Man, The X-Men, The Incredible Hulk, most of The Avengers, Thor, The Fantastic Four and Daredevil (collectively, the "Non Spider-Man Characters").

44. Pursuant to 17 U.S.C. 205(d), SLMI is the owner of the Non Spider-Man Characters under the Recorded, First-In-Time, SLMI Copyright Assignment and all intellectual property rights arising therefrom, including but not limited to all trademark rights for the Non Spider-Man Characters.

45. Pursuant to the trademark assignment and other intellectual property rights assignment in the Recorded, First-In-Time, SLMI Copyright Assignment, SLMI is the owner of all trademark rights for the Non Spider-Man Characters.

46. SLMI and AMT have entered into a valid and legally enforceable license granting AMT the exclusive right to use the Non Spider-Man Characters (the "SLMI-AMT Non Spider-Man Characters License") in connection with stage and theatrical productions.

47. Pursuant to the SLMI-AMT Non Spider-Man Characters License, AMT has a valid and legally enforceable right to use the Non Spider-Man Characters, without any copyright or trademark liability to MCI or the other Marvel-Disney Plaintiffs.

13

48.     The facts and law underlying this claim are so related to the facts and law underlying the Spider-Man related claim (Count 1 above) so as to form part of the same case or controversy.  This claim arises from the same set of operative facts as those underlying Count 1 above.

49.     Pursuant to the foregoing, as well as the Federal Declaratory Judgment Act under 28 U.S.C. 2201 and 2202, AMT respectfully requests that (a) the Court issue a declaratory judgment that, among other relief, (1) SLMI is the owner of the Non Spider-Man Characters under the Recorded, First-In-Time, SLMI Copyright Assignment, (2) AMT is the owner of a valid and legally enforceable exclusive Non Spider-Man Characters License from SLMI and (3) pursuant to the SLMI-AMT Non Spider-Man Characters License, neither AMT nor any of the other AMT Defendants has any liability to MCI (or the other Marvel-Disney Plaintiffs) for AMT's use of the Non Spider-Man Characters and (b) the Court issue appropriate injunctive relief in enforcement of the foregoing declaratory judgments.

**WHEREFORE**, third-party-plaintiff AMT respectfully requests that (a) the relief requested in AMT's third-party claims should be granted in their entirety and (b) such other and further relief should be awarded to AMT as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

AMT respectfully demands a trial by jury on its third-party claims and all issues relating thereto.

Respectfully submitted,

Camille M. Miller
Melanie A. Miller
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000
(215) 665-2273

Dated: November 4, 2013

*Attorneys for Third Party Plaintiff*
Entertainment Theatre Group d/b/a
American Music Theatre

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing was served

on all counsel of record, via first class mail, postage prepaid, addressed as follows:

**WILSON M. BROWN, III**
**MICHAEL METZ-TOPODAS**
DRINKER BIDDLE AND REATH L.L.P.
ONE LOGAN SQUARE
18TH AND CHERRY STREETS
PHILADELPHIA, PA 19103

**DAVID D. CONWAY**
**JOSHUA J. KAUFMAN**
VENABLE LLP
575 SEVENTH ST NW
WASHINGTON, DC 20004

**ANTHONY S. VOLPE**
**JOHN J. O'MALLEY**
**MICHAEL F. SNYDER**
VOLPE & KOENIG PC
UNITED PLAZA, STE. 1600
30 S. 17TH ST.
PHILADELPHIA, PA 19103

**CANDIDUS K. DOUGHERTY**
SWARTZ CAMPBELL LLC
TWO LIBERTY PL
50 S. 16TH ST. 28TH FL
PHILADELPHIA, PA 19102

**GEORGE E. SABA , JR.**
SWARTZ CAMPBELL LLC
5100 TILGHMAN STREET
SUITE 230
ALLENTOWN, PA 18104

Dated:  November 4, 2013                              **/s/ Camille M. Miller**