**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

----------------------------------------------------------------x

DISNEY ENTERPRISES, INC; WONDERLAND
MUSIC COMPANY, INC.; CAMERON MACKINTOSH
LTD.; MARVEL CHARACTERS, INC.; and MUSIC
THEATRE INTERNATIONAL, LLC,

                                        Plaintiffs,

          -against-                              Case No: 5:13-cv-05570 (JSL)

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE; JAMES D.
MARTIN; FREDERICK W. STEUDLER, JR.;
and DWIGHT H. BRUBAKER,

                                        Defendants.

----------------------------------------------------------------x

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

                    Counterclaim-Plaintiff,

          -against-

DISNEY ENTERPRISES, INC.; and
MARVEL CHARACTERS, INC.,

                    Counterclaim-Defendants.

----------------------------------------------------------------x

ENTERTAINM ENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

                    Third-Party Plaintiff,

          -against-                              **ANSWER OF THIRD-PARTY**
                                                 **DEFENDANT**

STAN LEE MEDIA, INC.,

                    Third-Party Defendant.       **DEMAND FOR JURY TRIAL**

----------------------------------------------------------------x

STAN LEE MEDIA, INC.,

          Third-Party Counterclaim-Plaintiff,

          -against-                              **RULE 14(A) CLAIMS**

DISNEY ENTERPRISES, INC.; and
MARVEL CHARACTERS, INC.,

          Third-Party Counterclaim-Defendants.  **DEMAND FOR JURY TRIAL**

----------------------------------------------------------------x

DM1\4376760.4

## ANSWER OF THIRD-PARTY DEFENDANT

Third-Party Defendant Stan Lee Media, Inc. ("SLMI"), by its undersigned counsel, answers the Third-Party Complaint from Third-Party Plaintiff Entertainment Theatre Group d/b/a American Music Theatre ("AMT") and, in support thereof, avers as follows:

1.      The allegations of paragraph 1 set forth conclusions of law that do not require a response.

2.      Admitted.

3.      Admitted.

4.      Admitted that "AMT and SLMI are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs" and, except as so admitted, the allegations of paragraph 4 set forth conclusions of law that do not require a response.

5.      Admitted that "a substantial part of the events giving rise to the claims in the underlying action occurred in this district" and, except as so admitted, the allegations of paragraph 5 set forth conclusions of law that do not require a response.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.      Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Admitted.

## Count I – Spider-Man Character

33.     SLMI incorporates by reference its responses to paragraphs 1 through 32 of the

Third-Party Complaint.

34.     Admitted.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     The allegations of paragraph 38 set forth conclusions of law that do not require a response.

39.     The allegations of paragraph 39 set forth conclusions of law that do not require a response.

## Count II – Non Spider-Man Characters

40.     SLMI incorporates by reference its responses to paragraphs 1 through 39 of the Third-Party Complaint.

41.     Admitted.

42.     The allegations of paragraph 42 set forth conclusions of law that do not require a response..

43.     The allegations of paragraph 43 set forth conclusions of law that do not require a response.

44.     The allegations of paragraph 44 set forth conclusions of law that do not require a response.

45.     Admitted.

46.     The allegations of paragraph 46 set forth conclusions of law that do not require a response.

47.     The allegations of paragraph 47 set forth conclusions of law that do not require a response.

48.     Admitted that "This claim arises from the same set of operative facts as those underlying Count I above" and, except as so admitted, the allegations of paragraph 48 set forth conclusions of law that do not require a response.

4

49.     The allegations of paragraph 49 set forth conclusions of law that do not require a response.

**WHEREFORE**, SLMI respectfully requests that the Court grant it the relief requested in its Prayer for Relief with respect to its Rule 14(a) Claims.

## DEMAND FOR JURY TRIAL

SLMI respectfully demands a trial by jury on all third-party claims and all issues relating thereto.

## RULE 14(A)(2)(C) AND RULE 14(A)(2)(D) CLAIMS AGAINST PLAINTIFFS DISNEY ENTERPRISES, INC. AND MARVEL CHARACTERS, INC.

Pursuant to FRCP 14(a)(2)(C) and 14(a)(2)(D), Third-Party Defendant SLMI hereby brings these counterclaims against Disney Enterprises, Inc. and Marvel Characters, Inc.  In support, SLMI avers as follows:

1.     All terms not defined herein shall have the same meanings given to them in the "AMT Defendants' Answer with Affirmative Defenses and Counterclaims" brought in response to the Plaintiffs' Complaint.

2.     The Court has subject matter jurisdiction over SLMI's claims pursuant to 28 U.S.C. 1338 and/or 28 U.S.C. 1331, because SLMI's claims involve a federal law determination of federally created rights in various copyrights and trademarks.  The Court also has subject matter jurisdiction over SLMI's claims pursuant to the supplemental jurisdiction provisions of 28 U.S.C. 1367.

3.     All parties to this action admit venue is proper in this judicial district over the third-party counterclaims, pursuant to 28 U.S.C. 1400.

5

4.     In the Complaint, it is alleged on behalf of Disney Enterprises, Inc. ("DEI") and Marvel Characters, Inc. ("MCI") (collectively, "Disney") that the Disney-owned MCI entity is the owner of various copyrights and trademarks regarding Spider-Man.  However, SLMI, not Disney or the Disney-owned MCI entity, is the owner of the copyrights and trademarks regarding Spider-Man.

5.     In AMT's counterclaims and third-party claims, it is alleged that:  (a) pursuant to SLMI's status as the holder of a publically recorded ownership interest in Spider-Man according to the federal copyright ownership records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use Spider-Man, both at the time of the alleged infringements set forth in the Complaint and going forward; and (b) pursuant to SLMI's status as the holder of a publically recorded ownership interest in an array of Non Spider-Man characters according to the federal copyright ownership records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use the Non Spider-Man characters, both at the time that AMT interposed its counterclaims and third-party claims herein and going forward.

6.     In response to Disney's Spider-Man claims and/or in response to AMT's counterclaims and third-party claims, SLMI respectfully seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, that Disney cannot bar SLMI from using or licensing the Spiderman copyrights and trademarks by virtue of the fact that SLMI (not Disney) is the owner of various copyrights and trademarks regarding Spider-Man and has properly licensed the copyrights and trademarks to AMT.

7.      In response to Disney's Spider-Man claims and/or in response to AMT's counterclaims and third-party claims, SLMI respectfully seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, that Disney cannot bar SLMI-AMT from using or licensing copyrights and trademarks in the Non Spider-Man characters by virtue of the fact that SLMI (not Disney) is the owner of various copyrights and trademarks regarding the Non Spider-Man characters.

8.      In October 1998, Stan Lee ("Lee"), the creator of Spider-Man, assigned in writing to Stan Lee Entertainment, Inc. ("SLEI"), SLMI's corporate predecessor-in-interest, all of Lee's copyright, trademark and other intellectual property interests in all characters and works that Lee had created (or would create in the future), such as Spider-Man.

9.      The assignment was contained in a written agreement signed by Lee individually and on behalf of SLEI by a SLEI company representative (the "Recorded, Assignment").  A true and correct copy of the Recorded Assignment is attached as Exhibit A to the "AMT Defendants' Answer with Affirmative Defenses and Counterclaims" interposed in response to the Plaintiffs' Complaint, and the same is incorporated herein by reference.

10.     In or about April 1999, SLEI merged into and transferred all of its rights and interests to a Delaware corporation called Stan Lee Media, Inc. ("SLMI-DE").

11.     In or about July 1999, SLMI-DE consummated a merger into, and transferred all of its rights and interests (including the rights transferred from SLEI), to a publically owned Colorado corporation called Boulder Capital Opportunities, Inc. ("BCOI").

12.     Subsequently, BCOI was renamed Stan Lee Media, Inc, a Colorado corporation, SLMI.

13.     In October 1999, Lee signed a written agreement amending, modifying and confirming the validity of the Recorded Assignment (the "SLMI Copyright Amendment").

14.     The SLMI Copyright Amendment and the Recorded Assignment were publically filed with the United States Securities and Exchange Commission in March 2000, as part of a form 10KSB also signed by Lee as SLMI's Chairman of the Board.  A true and correct copy of the SLMI Copyright Amendment is attached as Exhibit B to the "AMT Defendants' Answer with Affirmative Defenses and Counterclaims" interposed in response to the Plaintiffs' Complaint, and the same is incorporated herein by reference.

15.     On December 16, 2000, Lee, SLMI's Chairman of the Board, confirmed in writing that all he had created in the past and would create in the future belonged to SLMI.

16.     On November 28, 2006, the Recorded Assignment was publically recorded with the United States Copyright Office, in Volume 3544, as Document No. 426.

17.     The recordation, among other things, specifically lists a transfer of ownership of copyrights in Spider-Man, and other Lee-created characters such as The Incredible Hulk, X-Men, Fantastic Four, Iron Man, Daredevil, Silver Surfer, Dr. Strange and Stan Lee Presents.  True and correct copies of the United States Copyright Office's Certificate of Recordation, along with the recorded documents, are attached as Exhibit C to the "AMT Defendants' Answer with Affirmative Defenses and Counterclaims" interposed in response to the Plaintiffs' Complaint, and the same is incorporated herein by reference.

18.     Upon information and belief, in November 1998, and in violation of his obligations to SLMI, Lee signed a written agreement with Marvel Enterprises, Inc. in which he purportedly provided Marvel with a "conditional assignment" of certain rights in Spider-Man and other Lee-created characters (the "Conditional Assignment").  However, Lee no longer owned the rights set forth in the Conditional Assignment because those rights had been

8

previously assigned by Lee to SLEI (SLMI's corporate predecessor) and, therefore, the Conditional Assignment actually assigned nothing to Marvel-Disney.

19.     Upon information and belief, The Walt Disney Company ("TWDC") closed on its purchase of Marvel on December 31, 2009 (the "Disney-Marvel Purchase").

20.     Prior to the Disney-Marvel Purchase, Marvel had never publically recorded its Conditional Assignment.

21.     Prior to the Disney-Marvel Purchase, Marvel had never publically filed its Conditional Assignment with the United States Securities and Exchange Commission.

22.     Pursuant to the Disney-Marvel Purchase, TWDC succeeded to Marvel's purported intellectual property interests under the Conditional Assignment.

23.     Subsequent to the Disney-Marvel Purchase and continuing to date, neither TWDC or its Marvel subsidiaries have ever publically recorded the Conditional Assignment with the United States Copyright Office.

24.     Subsequent to the Disney-Marvel Purchase and continuing to date, neither TWDC or its Marvel subsidiaries have ever publically recorded the Conditional Assignment with the United States Securities and Exchange Commission.

25.     During the past decade, there have been a number of cases filed and pursued involving purported SLMI shareholders, Lee, TWDC, Marvel, SLMI and others.  Various pieces of that litigation occurred in New York, California and Colorado.  A summary of that litigation is set forth below.  However, even assuming that each of the prior rulings in prior litigation is effective (and some are no longer effective), none of those rulings limit in any sense SLMI's Rule 14 claims here.

26.     The Colorado litigation took place from 2007 to 2011 and was a corporate governance dispute.  The allegations in or relating to that corporate governance litigation include, among other things, that SLMI and approximately 1800 shareholders should be freed from the adverse domination, control and self-dealing of the prior management/shareholder group involving, among others, Lee and Disney-owned Marvel (the "Prior Control Group").  On May 27, 2010, the Court of Appeals of the State of Colorado issued a ruling that had the effect of authorizing a new board of directors, independent of Lee and the Prior Control Group, to act as SLMI's legally authorized representative to, among other things, recover SLMI's assets and to enforce SLMI's copyright ownership rights and other intellectual property rights (the "Corporate Governance Ruling").

27.     In October 2010, the Supreme Court of the State of Colorado denied a certiorari petition, filed by Lee on behalf of the Prior Control Group, seeking permission to appeal from the Corporate Governance Ruling.

28.     In November 2010, the Court of Appeals of the State of Colorado issued its mandate, returning jurisdiction over SLMI's corporate governance to the District Court of the State of Colorado.

29.     In January 2011, the District Court of the State of Colorado issued an order implementing and formally seating the new board of directors, independent of Lee and the Prior Control Group, as SLMI's legally authorized representative.

30.     The first New York litigation in the United States District Court for the Southern District of New York, 09 Civ. 0715 (PAC) was a legally unauthorized, putative, shareholder derivative lawsuit purportedly filed on behalf of "SLMI" against Marvel Entertainment, Lee and others (the "Legally Unauthorized Putative Derivative Case").  In the Legally Unauthorized

10

Putative Derivative Case, the plaintiffs sought relief solely in connection with three post-1998 characters created by Lee for SLMI, to wit: The Accuser, The Drifter and Stan's Evil Clone.  In the Legally Unauthorized Putative Derivative Case, plaintiffs did not assert any claims for relief regarding Spider-Man or any other pre-1998 characters created by Lee.

31.     During the Legally Unauthorized Putative Derivative Case, SLMI was adversely dominated and controlled by the Prior Control Group.  The Honorable Paul A. Crotty found, on March 30, 2010, that the putative derivative plaintiffs did not have standing to bring any claims on behalf of "SLMI" and were not authorized to sue on behalf of "SLMI."  Judge Crotty, however, also stated that the putative derivative claims set forth in an amended complaint filed in April 2009 were time-barred under California state law, without addressing the separate, distinct and independent federal statute of limitations for a copyright claim under the Copyright Act [17 U.S.C. 507(b)].

32.     A second piece of litigation in the United States District Court for the Southern District of New York was brought by Lee against various Marvel entities, 02 Civ. 8945 (RWS) (the "Lee-Marvel Case").  That litigation itself was in two parts.  In the first part, Lee filed a complaint on November 12, 2002, seeking certain contract damages, in which Lee asserted that he was the owner of Spider-Man and his other character creations, prior to his November 1998 "conditional assignment" to Marvel (to wit: the Conditional Assignment).

33.     On or about January 3, 2003, Marvel filed an answer acknowledging that its purported ownership interest in Spider-Man (and other Lee character creations) derives from Lee's November 1998 "conditional assignment" to Marvel (to wit: the Conditional Assignment). Marvel's answer, dated January 3, 2003, asserts an affirmative defense but does not assert any affirmative defense contending that Lee created his characters as a purported "work for hire."

11

34.     On or about January 17, 2005, the federal court granted partial summary judgment on liability in favor of Lee, and against Marvel, in reliance upon the joint representations by those parties that Marvel's claimed ownership interest in Spider-Man (and other Lee character creations) derives from Lee's November 1998 "conditional assignment" to Marvel (to wit: the Conditional Assignment).  As a result, by virtue of the doctrine of judicial estoppel and other grounds, Disney-owned Marvel is barred from asserting any ownership interest in Spider-Man (and other Lee character creations) except through Lee's November 1998 "conditional assignment" to Marvel (to wit: the Conditional Assignment).

35.     The Lee-Marvel Case subsequently settled on confidential terms and a Stipulation and Order closing the same was entered on April 27, 2005.

36.     In July 2010, SLMI's newly authorized and independent board of directors became concerned that efforts may have been made in the closed Lee-Marvel Case attempting to compromise SLMI's rights while SLMI was adversely dominated by Lee and the Prior Control Group.  Therefore, in July 2010, SLMI's newly authorized and independent board of directors, out of an abundance of caution, sought to intervene in, and vacate the 2005 closing of, the Lee-Marvel Case.

37.     The Request to Intervene  and to vacate the 2005 Order closing the Lee-Marvel Case was denied on the grounds that SLMI's intellectual property rights were not involved therein.  In the Order of Denial, the District Court also stated that the time-bar ruling in the Legally Unauthorized Putative Derivative Case bound SLMI under the *res judicata* doctrine.

38.     On March 21, 2012, the United States Court of Appeals for the Second Circuit (a) affirmed the District Court's decision denying the Request to Intervene and to vacate the 2005 closing of the Lee-Marvel Case and (b) expressly held that it would not reach, and therefore

12

chose not to affirm, the District Court's *res judicata* ruling.  Thus, the District Court's statements about the preclusive effect of the time-bar ruling in the Legally Unauthorized Putative Derivative Case against SLMI were rendered null and void, and SLMI was thereby freed by the Second Circuit's decision to proceed with litigation against Marvel-Disney in seeking to vindicate SLMI's rights under the Recorded Assignment.

39.     From approximately February 16, 2001 to a dismissal order issued on approximately November 14, 2006, Lee and the Prior Control Group pursued a Chapter 11 bankruptcy case for SLMI in the United States Bankruptcy Court for the Central District of California.  During the bankruptcy, Lee and the Prior Control Group failed to notify approximately 1800 SLMI shareholders about the bankruptcy or to afford them an opportunity to protect their interest in SLMI and SLMI's assets.

40.     On or about January 9, 2007, shortly after the dismissal of SLMI's bankruptcy, Lee commenced a lawsuit in the United States District Court for the Central District of California, 07-CV-225 (SVW), on behalf of himself, and as a shareholder in a putative derivative case on behalf of SLMI, seeking a determination, among other things, of intellectual property rights in various assets (the "2007 Case").  Subsequently, two other putative shareholder derivative cases were filed on behalf of SLMI in the California District Court and were assigned to the same District Judge handling the 2007 Case (the "Related Cases").

41.     On January 20, 2009, the California District Court issued a partial summary judgment ruling that (a) neither Lee, nor his post-SLMI entertainment companies, had legally acquired any ownership rights in SLMI's intellectual property assets during SLMI's bankruptcy, (b) Lee and others had violated the automatic stay during SLMI's bankruptcy in seeking to take intellectual property assets away from SLMI without the approval of the bankruptcy court and

(c) other proceedings in the Related Cases were stayed, pending the outcome of the Corporate Governance Litigation in Colorado.  Those merits determinations, which redound to the benefit of SLMI, are final and unappealable.

42.     In January and February 2011, the United States District Court for the Central District of California issued orders (a) consolidating the Related Cases, and designating the 2007 Case commenced by Lee, on behalf of SLMI and himself, as the lead case, (b) realigned SLMI as a plaintiff in the 2007 Case, now that SLMI was acting through a new legally authorized representative (independent of Lee and the Prior Control Group) by virtue of the Colorado Corporate Governance Ruling and (c) authorized SLMI to file a complaint in the 2007 Case against Lee and his post-SLMI entertainment companies POW! Entertainment and QED Productions as realigned defendants.

43.     On August 23, 2012, the United States District Court for the Central District of California (07-CV-225-SVW) consolidated with Case Nos. 07-CV-4438-SVW and 09-CV-2340-SVW) granted a pre-answer motion to dismiss the Related Cases by according *res judicata* effect to the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case – without addressing the legal effect of the Second Circuit's anti-preclusion ruling on March 21, 2012 in favor of SLMI.  SLMI has appealed that ruling to the United States Court of Appeals for the Ninth Circuit.  Significantly, the California District Court ruling does not adjudicate the merits of SLMI's position that SLMI is the legal owner of Spider-Man (and other pre-1998 Lee created characters) under the Recorded Assignment.  Neither the Marvel-Disney Plaintiffs in this case, nor TWDC, were a party to the Related Cases.

44.     In reliance upon the Second Circuit's anti-preclusion ruling on March 21, 2012 in favor of SLMI, on October 9, 2012 SLMI filed a single-count case for copyright infringement

14

against TWDC in the United States District Court for the District of Colorado, 12-CV-2663-WJM-KMT (the "Colorado Case"), solely seeking relief for the three year period preceding the commencement of the  Colorado Case and thereafter.

45.     The Colorado District Court denied TWDC's motion to stop SLMI from taking a videotaped deposition of Lee because Lee is now over 90 years of age as well as a central witness in the unadjudicated ownership rights dispute between SLMI and Disney.

46.     On September 5, 2013 the Colorado District Court granted TWDC's pre-answer motion to dismiss the Colorado Case by according issue preclusion effect (not *res judicata* effect) to the March 30, 2010 time-bar ruling in the Legally Unauthorized Putative Derivative Case – without addressing the legal effect of the Second Circuit's anti-preclusion ruling on March 21, 2012 in favor of SLMI.  SLMI has appealed that ruling to the United States Court of Appeals for the Tenth Circuit.  Significantly, the Colorado District Court ruling does not adjudicate the merits of SLMI's position that SLMI is the legal owner of Spider-Man (and other pre-1998 Lee created characters) under the Recorded Assignment.  Also, the Colorado District Court ruling does not adjudicate the merits of SLMI's position that, pursuant to the continuing infringement doctrine under federal copyright law, SLMI is entitled to enforce its ownership rights under the Recorded Assignment for all Disney infringements taking place subsequent to the effective date of the time-bar ruling in the Legally Unauthorized Putative Derivative Case.

**COUNT I- Declaratory Judgment That Disney Cannot Bar SLMI
From Using or Licensing The Spiderman Copyrights and Trademarks**

47.     SLMI incorporates by reference all of the allegations in paragraphs 1 through 46 inclusive as though set forth in full.

DM1\4376760.4

48.    In the Complaint, it is alleged on behalf of DEI and MCI (collectively, "Disney") that the Disney-owned MCI entity is the owner of various copyrights and trademarks regarding Spider-Man.  SLMI, however, not Disney or the Disney-owned MCI entity, is the owner of the copyrights and trademarks regarding Spider-Man.

49.    In AMT's counterclaims and third-party claims, it is alleged that (a) pursuant to SLMI's status as the holder of a publically recorded ownership interest in Spider-Man according to the federal copyright ownership records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use Spider-Man, both at the time of the alleged infringements set forth in the Complaint and going forward and (b) pursuant to SLMI's status as the holder of a publically recorded ownership interest in an array of Non Spiderman characters according to the federal copyright ownership records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use the Non Spider-Man characters, both at the time that AMT interposed its counterclaims and third-party claims herein and going forward.

50.    In response to Disney's Spider-Man claims and/or in response to AMT's counterclaims and third-party claims, SLMI respectfully seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, Disney cannot bar SLMI from using or licensing the Spiderman copyrights and trademarks on the grounds that (a) SLMI (not Disney) is the owner of various copyrights and trademarks regarding Spider-Man and/or (b) Disney has failed to record the Conditional Assignment with the United States Copyright Office in violation of 17 U.S.C. 205.

51.     Pursuant to 17 U.S.C. 205, with respect to Spider-Man, SLMI's ownership rights under its Recorded Assignment are legally superior to, and legally defeat, Disney's ownership rights under the Conditional Assignment.

52.     Pursuant to the foregoing, as well as the Federal Declaratory Judgment Act under 28 U.S.C. 2201 and 2202, SLMI respectfully requests that the Court issue a declaratory judgment that SLMI is the owner of Spider-Man under the Recorded Assignment and, pursuant thereto, the Court should issue appropriate injunctive and/or monetary relief in enforcement of such declaratory judgment to be determined in subsequent proceedings herein.

### COUNT II- Declaratory Judgment That Disney Cannot Bar SLMI From Using Or Licensing the Non Spider-Man Characters

53.     SLMI incorporates by reference all of the allegations in paragraphs 1 through 52 inclusive as though set forth in full.

54.     In the Complaint, it is alleged on behalf of DEI and MCI (collectively, "Disney") that the Disney-owned MCI entity is the owner of various copyrights and trademarks regarding Spider-Man.  SLMI, however, not Disney or the Disney-owned MCI entity, is the owner of the copyrights and trademarks regarding Spider-Man.

55.     In AMT's counterclaims and third-party claims, it is alleged that (a) pursuant to SLMI's status as the holder of a publically recorded ownership interest in Spider-Man according to the federal copyright ownership records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use Spider-Man, both at the time of the alleged infringements set forth in the Complaint and going forward and (b) pursuant to SLMI's status as the holder of a publically recorded ownership interest in an array of Non Spiderman characters according to the federal copyright ownership

records maintained by the United States Copyright Office, AMT is the holder of a valid and enforceable written license from SLMI authorizing AMT to use the Non Spider-Man characters, both at the time that AMT interposed its counterclaims and third-party claims herein and going forward.

56.      In response to Disney's Spider-Man claims and/or in response to AMT's counterclaims and third-party claims, SLMI respectfully seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, that Disney cannot bar SLMI from using or licensing the Non Spider-Man Characters on the grounds that (a) SLMI (not Disney) is the owner of various copyrights and trademarks regarding the Non Spider-Man characters and/or (b) Disney has failed to record the Conditional Assignment with the United States Copyright Office in violation of 17 U.S.C. 205.

57.      Pursuant to 17 U.S.C. 205, with respect to the Non Spiderman characters, SLMI's ownership rights under its Recorded Assignment are legally superior to, and legally defeat, Disney's ownership rights under the Conditional Assignment.

58.      Pursuant to the foregoing, as well as the Federal Declaratory Judgment Act under 28 U.S.C. 2201 and 2202, SLMI respectfully requests that the Court issue a declaratory judgment that SLMI is the owner of the Non Spider-Man characters under the Recorded Assignment and, pursuant thereto, the Court should issue appropriate injunctive and/or monetary relief in enforcement of such declaratory judgment to be determined in subsequent proceedings herein.

DM1\4376760.4

**WHEREFORE**, SLMI respectfully requests that:

a) the relief requested in SLMI's Rule 14(a)(2)(C) and Rule 14(a)(2)(D) claims should be granted in its entirety;

b) reasonable legal fees, litigation expenses and costs incurred on behalf of SLMI should be awarded to SLMI, pursuant to Section 505 of the Copyright Act [17 U.S.C. 505] and/or pursuant to Section 35 of the Lanham Act [15 U.S.C. 1117(a)]; and

c) such other and further relief should be awarded to SLMI as the Court deems just and proper.

Respectfully submitted,

/s/   David E. Landau
David E. Landau
Aliza R. Karetnick
Robert M. Palumbos
Jessica Priselac
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103-4196
t: (215) 979-1230
f: (215 405-2952

*Counsel for Stan Lee Media, Inc.*

Date:  December 3, 2013

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record via the Court's CM/ECF System at the email address listed in the Court's database.  Copies will be manually emailed to the following attorneys whose email addresses are not in the Court's database:

JAMES W. QUINN
james.quinn@weil.com

R. BRUCE RICH
bruce.rich@weil.com

RANDI W. SINGER
randi.singer@weil.com

        /s/  Jessica Priselac
Jessica Priselac

Dated:   December 3, 2013