UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DISNEY ENTERPRISES, INC.; WONDERLAND
MUSIC COMPANY, INC.; CAMERON
MACKINTOSH LTD.; MARVEL CHARACTERS,
INC.; and MUSIC THEATRE INTERNATIONAL,
LLC,

                Plaintiffs

      v.                                          Civ. No. 5:13-cv-05570(JLS)

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE; JAMES D.
MARTIN; FREDERICK W. STEUDLER, JR.; and
DWIGHT H. BRUBAKER,

                Defendants

----------------------------------------------------------------x

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

                Counterclaim-Plaintiff

      v.

DISNEY ENTERPRISES, INC.; and MARVEL
CHARACTERS, INC.,

                Counterclaim-Defendant

----------------------------------------------------------------x

ENTERTAINMENT THEATRE GROUP d/b/a
AMERICAN MUSIC THEATRE,

                Third-Party Plaintiff

      v.

STAN LEE MEDIA, INC.,

                Third-Party Defendant.

----------------------------------------------------------------x

STAN LEE MEDIA, INC.,

                Third-Party Counterclaim-Plaintiff

      v.

DISNEY ENTERPRISES, INC.; and MARVEL
CHARACTERS, INC.,

                Third-Party Counterclaim-Defendants

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-
PARTY COUNTERCLAIMS AND
TO STRIKE AFFIRMATIVE
DEFENSES**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT ..................................................................................................... 8

I.    Applicable Legal Standards ........................................................................ 8

II.   SLMI's Third-Party Counterclaims and AMT's Counterclaims Fail To State a
      Claim Upon Which Relief Can Be Granted ................................................. 9

      A.    Res Judicata Bars SLMI and AMT's Counterclaims ........................... 10

            1.    *Abadin I* Was a Final Judgment On the Merits ..................... 10

            2.    *Abadin I* Involved the Same Parties and Their Privies ............. 12

            3.    The Instant Suit Involves the Same Cause Of Action As *Abadin I* ........... 13

      B.    Collateral Estoppel Also Bars SLMI's Third-Party Counterclaims and
            AMT's Counterclaims .................................................................... 14

      C.    SLMI Is an Administratively Dissolved Corporation That Lacks the
            Capacity To License AMT ............................................................... 16

III.  SLMI's Third-Party Trademark Counterclaims and AMT's Trademark
      Counterclaims Fail To State a Claim ......................................................... 17

IV.   The Court Lacks Subject-Matter Jurisdiction Over AMT's Second Counterclaim
      Because There Is No Actual Controversy Over the "Non Spider-Man Characters" ......... 17

V.    The Court Lacks Subject-Matter Jurisdiction Over AMT's Second Counterclaim
      Because It Is Collusive .................................................................................. 19

CONCLUSION ..................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadin v. Marvel Entm't, Inc.*,
  No. 09 Civ 0715 (PAC), 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010).......................*passim*

*Anspach v. City of Phila.*,
  380 F. App'x 180 (3d Cir. 2010) ................................................................................14

*Arena v. McShane*,
  150 F. App'x 165 (3d Cir. 2005) ................................................................................15

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) .........................................................................................3

*Butler v. Hartlaub*,
  No. 1:08–cv–02240, 2012 WL 174962 (M.D. Pa. Jan. 20, 2012)...........................15

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013)...........................................................................................18, 19

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007) ........................................................................................10

*Elkadrawy v. Vanguard Group, Inc.*,
  584 F.3d 169 (3d Cir. 2009) ......................................................................................11

*Flast v. Cohen*,
  392 U.S. 83 (1968) .....................................................................................................19

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) ........................................................................................8

*Hoppe v. Percheron Assocs., LLC*,
  No. 11-cv-03233-CBS, 2012 WL 3135378 (D. Colo. Aug. 1, 2012)......................16

*J & J Sports Prods., Inc. v. Gonzalez*,
  Civ. No. 12-6313, 2013 WL 6022225 (E.D. Pa. Nov. 14, 2013) ..............................9

*Jackson v. Dow Chem. Co.*,
  902 F. Supp. 2d 658 (E.D. Pa. 2012), *aff'd*, 518 F. App'x 99 (3d Cir. 2013) ........13

*Lee v. Marvel Enters., Inc.*,
  765 F. Supp. 2d 440 (S.D.N.Y. 2011) ..................................................................*passim*

US_ACTIVE\44368548\15\79593.0037

*Lee v. Marvel Enters., Inc.*,
    471 F. App'x 14 (2d Cir. 2012) .................................................................................7, 11

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*,
    456 F. Supp. 531 (S.D.N.Y. 1977) .................................................................................4

*Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc.*,
    No. C-12-3433 SC, 2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ........................................17

*Market St. Secs., Inc. v. NASDAQ OMX PHLX LLC*,
    900 F. Supp. 2d 529 (E.D. Pa. 2012) ...........................................................................18

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ..............................................................................3, 4, 12

*McNiff v. Asset Mgmt. Specialists, Inc.*,
    337 F. Supp. 2d 685 (E.D. Pa. 2004) .............................................................................9

*Nash v. Jilles*,
    No. 07-03985, 2007 WL 2844823 (E.D. Pa. Sept. 28, 2007) ..............................................15

*O'Leary v. Liberty Mut. Ins. Co.*,
    923 F.2d 1062 (3d Cir. 1991) ...................................................................................15

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ......................................................................................3

*Shah v. United States*,
    No. 13–2383, 2013 WL 5421992 (3d Cir. Sept. 30, 2013) ...................................................8

*Sims v. Viacom, Inc.*,
    No. 13-1567, 2013 WL 6018840 (3d Cir. Nov. 14, 2013) ..............................................10, 12

*Stan Lee Media Inc. v. Lee*,
    No. 2:07-cv-00225-SVW-SSx, 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012) ...............*passim*

*Stan Lee Media, Inc. v. Walt Disney Co.*,
    No. 12-cv-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013) ...................*passim*

*Taggart v. Chase Bank USA, N.A.*,
    375 F. App'x 266 (3d Cir. 2010) .................................................................................11

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ..........................................................................................12, 14

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
    Civ. No. 11-4574, 2013 WL 5567576 (E.D. Pa. Oct. 9, 2013) ..............................................9

iii

*Warren Gen. Hosp. v. Amgen Inc.*,
   643 F.3d 77 (3d Cir. 2011) ........................................................................8

*Woodruff v. Chesapeake Appalachia, LLC*,
   No. 3:13-mc-510, 2013 WL 6182379 (M.D. Pa. Nov. 25, 2013) ...........................19

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ........................................................................18

**Statutes**

U.S. Const. Art. III § 2 ........................................................................18

28 U.S.C. § 2201(a) ........................................................................18

Colo. Rev. Stat. § 7-114-105 ........................................................................16

**Other Authorities**

19 Am. Jur. 2d Corporations § 2485 ........................................................................16

18A C. Wright, *Fed. Practice & Procedure* § 4462........................................................................13

Fed. R. Evid. 201(b)(2)........................................................................4

US_ACTIVE:\44368548\15\79593.0037

Plaintiffs, Counterclaim-Defendants, and Third-Party Counterclaim-Defendants Disney Enterprises, Inc. ("Disney") and Marvel Characters, Inc. ("Marvel") submit this memorandum in support of their motion pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure to: (1) dismiss Defendant Entertainment Theatre Group d/b/a American Music Theatre ("AMT")'s counterclaims with prejudice; (2) dismiss Third-Party Defendant Stan Lee Media, Inc. ("SLMI")'s third-party counterclaims with prejudice; and (3) strike certain Affirmative Defenses asserted by AMT, James D. Martin, Frederick W. Steudler, Jr., and Dwight H. Brubaker (collectively, "Defendants").

## INTRODUCTION

This action began as a straightforward copyright and trademark infringement case over a musical theatre production. Plaintiffs own and manage intellectual properties from the hit Broadway musicals *Mary Poppins*, *The Lion King*, and *Spider-Man Turn Off the Dark*. AMT willfully lifted copyrighted portions of all three productions—as well as many others[1]—and used them without permission in its commercial stage production, *Broadway: Now and Forever*. AMT also used Plaintiffs' famous trademarks to promote the show.

That simple case has now been transmogrified. AMT has colluded with SLMI to relitigate issues utterly irrelevant to this dispute by asserting that it has a license from SLMI to use the Spider-Man character. SLMI is actually a dissolved company whose sole activity appears to be litigating—and repeatedly losing—claims that it owns the copyrights in Marvel's characters, including Spider-Man. AMT has counterclaimed for a declaratory judgment that its

---

[1] The Rogers and Hammerstein Organization and other plaintiffs have brought a separate copyright infringement case against AMT for using portions of "The Producers," "West Side Story," "Annie," "Les Miserables," "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" in *Broadway: Now and Forever*. *See The Rogers and Hammerstein Organization et. al. v. Brubaker et al.*, No. 5:13-cv-05660-LS (E.D. Pa. filed Sept. 26, 2013).

"license" to use Spider-Man, along with other unspecified "Non Spider-Man Characters" that do not even appear in *Broadway: Now and Forever* (collectively, the "Marvel Characters"), is valid. AMT has also filed an obviously collusive third-party "complaint" against SLMI seeking the same relief. To boot, SLMI "answered" AMT's third-party complaint by admitting all of AMT's factual allegations and asserting a third-party counterclaim for the same declaratory judgment against Disney and Marvel.

Tellingly, SLMI and AMT do not reveal the date of their purported license agreement, because it surely post-dates Plaintiffs' Complaint. Nor do they mention that SLMI was administratively dissolved under Colorado law in 2002 and therefore cannot grant licenses as a matter of law. But a much more fundamental issue dooms the "license": *four* federal courts have already held that SLMI "is precluded from re-litigating the issue of its ownership of copyrights based on the 1998 Agreement." *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-cv-2663-WJM-KMT, 2013 WL 4776026, at *4 (D. Colo. Sept. 5, 2013); *see also Stan Lee Media Inc. v. Lee*, No. 2:07-cv-00225-SVW-SSx, 2012 WL 4048871, at *7 (C.D. Cal. Aug. 23, 2012); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 444-45 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 14, 17 (2d Cir. 2012); *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 0715 (PAC), 2010 WL 1257519, at *7 (S.D.N.Y. Mar. 31, 2010) ("*Abadin I*") (collectively, the "Dismissed SLMI Cases"). Perhaps SLMI and AMT believe this Court will contradict the decisions of two district courts in New York, one in California, and one in Colorado by holding that SLMI *does* own the Marvel Characters, but those decisions are *res judicata* and definitively foreclose SLMI and AMT from using this Court as a *fifth* forum for re-litigating SLMI's failed ownership claims – particularly given that the Second Circuit recently affirmed that Marvel has owned the

2

copyrights to these characters since Marvel caused them – and paid for them – to be created in the 1960s. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).

If SLMI cannot claim to own the rights to the Marvel Characters, it cannot license them to AMT or anyone else. Consequently, under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, the Court should dismiss AMT's counterclaims and SLMI's third-party counterclaims on *res judicata* grounds and strike Defendants' related affirmative defenses premised on SLMI's purported ownership of the copyrights in Spider-Man. The Court should also dismiss AMT's counterclaims and SLMI's third-party counterclaims pertaining to Marvel Characters *other than* Spider-Man (termed "Non Spider-Man Characters" in AMT and SLMI's pleadings) for lack of subject matter jurisdiction because there is no actual controversy concerning those characters, none of which appear in *Broadway: Now and Forever* or any other AMT production. Finally, SLMI's trademark claims should be stricken both because SLMI does not (and cannot) identify any trademarks that it purports to own and because it is also *res judicata* that the applicable statute of limitations bars the trademark claims as well.

## BACKGROUND

For more than 40 years until 1998, Stan Lee was a full-time employee of Marvel and its predecessors, during which time Marvel created Spider-Man, Iron Man, The Incredible Hulk, Thor, The X-Men, The Avengers, and other iconic comic book characters.[2] *See Lee v. Marvel*

---

[2] The facts are drawn from the Defendants' Answer, Affirmative Defenses And Counterclaims, dated November 4, 2013, ECF No. 24 ("AMT Answer" or "AMT Counterclaims," as appropriate); the Third-Party Complaint of AMT, dated November 4, 2013, ECF No. 25 ("Third-Party Complaint"); the Answer of Third-Party Defendant, dated December 3, 2013, ECF No. 50 ("SLMI Answer" or "SLMI Counterclaims," as appropriate); documents incorporated by reference; and documents of which this Court may take judicial notice. On a motion to dismiss, a court may take judicial notice of pleadings and documents filed and decisions made in other federal courts. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or

*Enters., Inc.*, 765 F. Supp. 2d at 444-45; AMT Counterclaims ¶¶ 5, 9; SLMI Counterclaims ¶¶ 8, 17.  Stan Lee Entertainment, Inc. ("SL Entertainment"), the alleged corporate predecessor of SLMI, was formed after Lee's full-time employment with Marvel ended.  *See Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d at 444-45; AMT Counterclaims ¶ 5; SLMI Counterclaims ¶ 8.  In October 1998, Lee entered into an agreement with SL Entertainment (the "1998 Agreement").  AMT Counterclaims ¶ 5 & Ex. A; SLMI Counterclaims ¶ 8.  Lee terminated the 1998 Agreement for material breach in January 2001.  *See* AMT Counterclaims Ex. A ¶¶ 4(b) & (c); Singer Decl. Ex. 1.[3]

Six years later, SLMI and various others acting in its name commenced a series of lawsuits against Marvel and Lee, asserting that SLMI owned copyrights in the Marvel Characters pursuant to the 1998 Agreement.  Three actions were lodged against Marvel Entertainment Inc. (the Marvel parent company at that time) in the Southern District of New York, while the others were filed against Lee, his production company and business associates and were consolidated into a single action in the Central District of California.  *See* AMT Counterclaims ¶¶ 12-28;

---

submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 201(b)(2).  Certain of such judicially noticeable documents are attached as exhibits to the Declaration of Randi W. Singer, dated December 20, 2013 ("Singer Decl.").

[3] AMT and SLMI seem to suggest that they are entitled to a presumption of ownership in the copyrights in issue because they, unlike Marvel, recorded an "assignment" of those copyrights from Stan Lee. *See* AMT Counterclaims ¶¶ 10-11; SLMI Counterclaims ¶¶ 18-24.  Copyright law is to the contrary. *See Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531, 536 (S.D.N.Y. 1977) (noting that "the parties have not cited, nor has the Court's research uncovered, a single case holding that a copyright Assignment on file with the Copyright Office is prima facie evidence of the facts stated therein" and concluding an assignment invalid under the 1909 copyright act), *aff'd*, 592 F.2d 651 (2d Cir. 1978).  Moreover, Marvel has owned the subject copyrights outright since Marvel initiated their creation as works made for hire. *See Kirby*, 726 F.3d 119.  A copyright holder is not required to assign its copyrights to itself.

4

SLMI Counterclaims ¶¶ 25-46.  Most recently, SLMI sued The Walt Disney Company in

Colorado.  *See id.*; *Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026.

In all of these cases, SLMI erroneously contended that the 1998 Agreement included a

grant of rights in characters that Lee had co-created during his exclusive employment with

Marvel.  AMT Counterclaims ¶¶ 5, 9; SLMI Counterclaims ¶¶ 8, 17.  As a result, each of the

Dismissed SLMI Cases adjudicated (and rejected) the same claim of ownership under the 1998

Agreement on which SLMI and AMT based their counterclaims here.[4]

The first substantive disposition came in a shareholders' derivative action filed in 2009 in

the Southern District of New York.  *See Abadin I*, 2010 WL 1257519, at *7.[5]  In his March 2010

ruling, Judge Crotty recounted the efforts of SLMI and others on its behalf to raise identical

issues of copyright ownership in several courts and admonished that the time had finally come to

"bring this matter to a close" (*id.* at *6 n.5) because:

---

[4] In *Abadin I*, SLMI alleged that it was "the assignee of Lee, pursuant to the [1998] Agreement, of any and all of Lee's creations and characters" and that it obtained "certain property" through the assignment in the same 1998 Agreement at issue here, relating to, among other things, "various world famous characters created by Lee" that were incorporated into "'Marvel' movies ('X-Men,' 'Spider Man 1, 2 and 3,' 'The Incredible Hulk,' 'Fantastic Four,' 'Iron Man,' and 'Daredevil')."  *See* Singer Decl. Ex. 2 ¶¶ 24-27, 47, 49, 51-52, 106-121.  In its attempt to intervene in *Lee v. Marvel Enterprises*, SLMI asserted that the 1998 Agreement "conveyed to SLMI's predecessor in interest copyright interests supposedly owned by Lee in characters he had created or co-created as a Marvel employee."  765 F. Supp. 2d at 445.  In *Stan Lee Media Inc. v. Lee*, SLMI alleged that the "1998 Assignment transferred to SLMI all intellectual property rights that Lee might have, 'now or in the future,' which includes . . . the following: (a) Lee's intellectual property rights in characters authored by Lee, such as Spider-Man, The Incredible Hulk, The X-Men, The Fantastic Four, Iron Man, Thor, Daredevil, and many other characters."  *Id.* Ex. 3 ¶ 2; *see also id.* ¶¶ 24, 27, 63-65.  Likewise, SLMI's complaint in *Stan Lee Media, Inc. v. Walt Disney Co.* alleged that SLMI owned rights in "comic book characters . . . that [Lee] had previously created or would create in the future," including Iron Man, The X-Men, The Avengers and Spider-Man, based on the 1998 Agreement.  *Id.* Ex. 4 ¶¶ 1, 4, 9.

[5] Abadin filed a duplicative derivative suit in California, Singer Decl. Ex. 5, where all related proceedings were subsequently stayed pending resolution of the New York litigations, *id.* Exs. 6-7.

5

> The transaction [underlying SLMI's claims] is now more than a decade old. Plaintiffs have been attempting to initiate the proceeding in this Court now for more than three years; in Colorado Supreme Court for more than half a decade; for three years in the U.S. District Court for the Central District of California; and in a bankruptcy proceeding involving SLMI, which began in February, 2001 and continued to December, 2006. There has also been class action litigation in the Central District of California involving these same parties, as well as a settlement thereof. Moreover, one of the princip[al] instigators of litigation involving SLMI is a convicted felon who manipulated SLMI's stock. Finally, the proposed amended pleading is the fourth such pleading dealing with SLMI's allegations against Marvel and Lee here in the Southern District [of New York]. . . . Given the pleading history . . . , it is now time to call a halt.

*Id.* at *4.

Judge Crotty dismissed the complaint with prejudice, expressly holding that the "copyright claim" was "barred by the statute of limitations and the doctrine of laches and estoppel." *Id.* Rejecting the plaintiffs' argument that the copyright limitations period should be tolled, Judge Crotty found that Marvel's alleged conduct was "neither secret nor clandestine; but rather open and notorious." *Id.* at *6 n.5. In other words, Judge Crotty *did* in fact "address[] the separate, distinct and independent federal statute of limitations for a copyright claim." SLMI Counterclaims ¶ 31; AMT Counterclaims ¶ 17.

SLMI abandoned its appeal of that ruling[6] and instead asserted the same copyright ownership claim in a separate proceeding, seeking to vacate a judgment in a long-settled dispute between Marvel and Stan Lee over a financial provision of Stan Lee's employment contract. Judge Sweet denied SLMI's motion on numerous grounds, including that it was untimely—as SLMI had waited more than five years after the judgment was entered—and that *res judicata*

---

[6] *See* Order at 1-2, *Abadin v. Marvel Entm't, Inc.*, No. 10-1717 (2d Cir. Sept. 16, 2010) (dismissing appeal because the "case is deemed in default").

US_ACTIVE:\44368548\15\79593.0037

barred the claim following Judge Crotty's decision. *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d

440 (S.D.N.Y. 2011). The court held that:

> The pattern of litigation undertaken by [SLMI] the purported "real
> parties in interest," described above, and the timing of these
> proceedings indicate that the purpose of this application to vacate
> the Orders in this action … is to assert a new claim relating back to
> the initiation of this action in order to avoid Judge Crotty's ruling
> that this new claim is time-barred. That purpose does not invoke
> equity or establish clean hands.

*Id.* at 452 (emphasis added). SLMI appealed, and on March 21, 2012, the United States Court of

Appeals for the Second Circuit affirmed the district court's dismissal of SLMI's motion. *Lee v.

Marvel Enters.*, 471 F. App'x 14 (2d Cir. 2012).

Having failed in two separate actions before two different federal judges in New York,

SLMI then tried again in California, asserting the same copyright ownership claim grounded in

identical allegations. The court denied SLMI's claims on *res judicata* grounds based on *Abadin

I*, explicitly rejecting SLMI's contention that it was not bound by the New York shareholder-

derivative litigation. *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *4-7 (holding that SLMI

was in privity with the *Abadin I* plaintiffs for purposes of *res judicata*).

Undeterred, SLMI next targeted Marvel's parent corporation, The Walt Disney

Company, with a new suit in the U.S. District Court for the District of Colorado. *Stan Lee

Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *1. But this transparent attempt to pursue

the same claim against a different entity also failed; the District Court in Colorado became the

fourth to reject SLMI's copyright claims, holding that "[SLMI] is precluded from re-litigating

the issue of its ownership of copyrights based on the 1998 Agreement, which issue was decided

against it in *Abadin*." *Id.* at *4. In so doing, the court noted that SLMI "has tried time and time

again to claim ownership of those [Marvel Characters]; the litigation history arising out of the

1998 Agreement stretches over more than a decade and at least six courts." *Id.*

US_ACTIVE:\44368548\15\79593.0037

Now, SLMI appears to have recruited AMT to assist in yet another effort to re-litigate its failed claims of copyright ownership based on the 1998 Agreement. After Plaintiffs sued here, SLMI apparently granted AMT an exclusive license to use Spider-Man and other "Non-Spider-Man" characters, "including but not limited to Iron Man, The X-Men, The Incredible Hulk, most of The Avengers, The Fantastic Four and Daredevil" in connection with stage and theatrical productions in order to provide AMT with a putative defense to some of Plaintiffs' infringement claims. AMT Counterclaims ¶¶ 4, 33, 40, 43.[7]

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) should be granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Where the Court finds that a claim fails as a matter of law under the doctrines of *res judicata* or collateral estoppel, the court may dismiss it. "Although *res judicata* is an affirmative defense for a defendant to plead, Fed.R.Civ.P. 8(c), dismissal [under Rule 12(b)(6)] may be appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as *res judicata* will necessarily defeat the claim." *Shah v. United States*, No. 13–2383, 2013 WL 5421992, at *2 (3d Cir. Sept. 30, 2013) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

A motion to dismiss under Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d

---

[7] On December 9, 2013, Plaintiffs sent a letter notifying counsel for SLMI and AMT that unless they withdraw their pleadings, Plaintiffs reserve the right to file a motion for Rule 11 sanctions and seek an award of attorney's fees as the prevailing party under Section 505 of the Copyright Act and also pursuant to 28 U.S.C. § 1927 for the unreasonable and vexatious multiplication of proceedings. Plaintiffs reserve the right to seek such sanctions and fees if the Court grants Plaintiffs' present motion to dismiss.

169, 176 (3d Cir. 2000).  When, as here, "a defendant attacks subject matter jurisdiction 'in fact,' as opposed to an attack on the allegations on the face of the complaint, the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.  In such a situation, no presumptive truthfulness attaches to plaintiff's allegations . . . ."  *McNiff v. Asset Mgmt. Specialists, Inc.*, 337 F. Supp. 2d 685, 689 (E.D. Pa. 2004) (internal quotation marks omitted).

Rule 12(f) provides the court an avenue to strike immaterial, impertinent, or scandalous pleadings.  *J & J Sports Prods., Inc. v. Gonzalez*, Civ. No. 12-6313, 2013 WL 6022225, at *2 (E.D. Pa. Nov. 14, 2013).  Where, as here, an affirmative defense "rest[s] on the same legal grounds as . . . [a] legally-insufficient Counterclaim[]," the affirmative defense fails as a matter of law and should be stricken.  *TruePosition, Inc. v. LM Ericsson Tel. Co.*, Civ. No. 11-4574, 2013 WL 5567576, at *8-9 (E.D. Pa. Oct. 9, 2013).

## II.   SLMI'S THIRD-PARTY COUNTERCLAIMS AND AMT'S COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Hoping that this Court will depart from the rulings of four of its predecessors, SLMI and AMT ask this Court to declare that, pursuant to the 1998 Agreement, SLMI owns the copyrights and trademarks to Spider-Man and other Marvel Characters that Marvel has owned and openly exploited for more than fifty years.  *See* SLMI Counterclaims ¶¶ 50-52, 56-58; AMT Counterclaims ¶¶ 38, 48.  Based on SLMI's purported ownership of those characters, AMT also seeks a declaration that it has "valid and legally enforceable" licenses from SLMI to use them in connection with stage and theatrical productions.  AMT Counterclaims ¶¶ 38, 48.  But, as a matter of law, SLMI *does not* own the Marvel Characters and lacks the capacity to license them to AMT.  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *4 (holding that SLMI is "precluded from asserting its alleged ownership of copyrights under the 1998 Agreement"); *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7; *Lee v. Marvel Enters., Inc.*,

9

765 F. Supp. 2d at 456; *Abadin I*, 2010 WL 1257519, at *7. Simply put, a copyright owner "may not convey more than he owns." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). Thus, SLMI's third-party counterclaims and AMT's counterclaims fail as a matter of law and should be dismissed.

**A.      Res Judicata Bars SLMI and AMT's Counterclaims**

*Res judicata* (or claim preclusion) precludes re-litigation of a claim if there has been "(1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Sims v. Viacom, Inc.*, No. 13-1567, 2013 WL 6018840, at *2 (3d Cir. Nov. 14, 2013) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). All three elements are satisfied here.

1.      *Abadin I* Was a Final Judgment On the Merits

The *Abadin I* litigation before Judge Crotty in the Southern District of New York produced a final judgment on the merits in March 2010. There, SLMI's shareholders brought a derivative action against Marvel Entertainment, Inc., seeking to compel Marvel to account for profits on the theory that SLMI, not Marvel, owned the Marvel Characters pursuant to the 1998 Agreement. *See Abadin I*, 2010 WL 1257519, at *1; Singer Decl. Ex. 2 ¶¶ 24-27, 43, 47, 49, 51-52, 106-121. Judge Crotty granted Marvel Entertainment's motion to dismiss, holding that SLMI's claims of copyright ownership were barred by the statute of limitations and the doctrines of laches and estoppel, and that the time had finally come to "bring this matter to a close." *Abadin I*, 2010 WL 1257519, at *7.

SLMI and AMT's assertion that Judge Crotty did not "address[] the separate, distinct and independent federal statute of limitations for a copyright claim" is simply wrong. SLMI Counterclaims ¶ 31; AMT Counterclaims ¶ 17. Judge Crotty specifically considered the

"copyright claim," and found it to be "barred by the statute of limitations and the doctrine of laches and estoppel." *Abadin I*, 2010 WL 1257519, at *6.[8]

A dismissal based on statute of limitations is a final judgment on the merits for purposes of *res judicata*. *See Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (holding that prior dismissal based on the statute of limitations was a judgment on the merits, and plaintiff's claims therefore were precluded); *Taggart v. Chase Bank USA, N.A.*, 375 F. App'x 266, 268 (3d Cir. 2010) (same).  Indeed, when SLMI continued to press its copyright ownership claims in three other federal actions, all three cases were dismissed on the basis that *Abadin I* was *res judicata*. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *4; *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7; *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d at 456.

Finally, SLMI cemented the preclusive effect of Judge Crotty's ruling in *Abadin I* when it abandoned its appeal there.  Thus, SLMI's assertions that the Second Circuit's decision not to reach the question of *res judicata* in affirming Judge Sweet's decision (which denied SLMI's attempt to vacate the *Lee v. Marvel Enterprises* judgment) somehow negated the preclusive effect of Judge Crotty's decision in *Abadin I* are simply wrong.  *See Lee v. Marvel Enters., Inc.*, 471 F. App'x 14 ; SLMI Counterclaims ¶ 38; AMT Counterclaims ¶ 21.  In fact, two federal courts recognized *Abadin I*'s preclusive effect even after the Second Circuit's decision.  *Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *4; *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7.

---

[8] Judge Crotty also found that California state law precluded SLMI from attempting to enforce the terminated employment contract beyond its term, and that the various applicable statutes of limitations barred SLMI's trademark and other claims. *Abadin I*, 2010 WL 1257519, at *5-7.

2.    *Abadin I* Involved the Same Parties and Their Privies

This case and *Abadin I* involve "the same parties or their privies." *Sims*, 2013 WL

6018840, at *2.  Marvel was a party to both litigations, defending its rights to the Marvel

Characters.[9]  And SLMI is in privity with the shareholders who brought *Abadin I* as a derivative

action.  *See Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *4-7 (applying *res judicata*

against SLMI's claims to the Marvel Characters based on prior derivative action by SLMI's

shareholders); *Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d at 456 (same).  Having twice lost

its arguments against privity, SLMI did not even contest the issue before Judge Martinez in

Colorado.  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *3 (SLMI "does

not contest that it was a party to the case Defendant claims is preclusive [*Abadin I*]").

Although AMT was not a party to the Dismissed SLMI Cases, SLMI and AMT cannot

avoid the preclusive effect of those judgments by using AMT as a proxy to re-litigate SLMI's

failed ownership claims.  The Supreme Court has ruled that a "party bound by a judgment may

not avoid its preclusive force by relitigating through a proxy." *Taylor v. Sturgell*, 553 U.S. 880,

895 (2008).  Yet, that is precisely what SLMI is attempting to do here by allegedly licensing

AMT.

AMT's "exclusive license" (AMT Counterclaims ¶ 4) puts AMT into SLMI's shoes for

purposes of the "same parties or privies analysis" by making AMT the beneficial owner of

SLMI's alleged copyrights.  Thus, because SLMI is precluded from claiming copyright

ownership, so too is AMT. *Taylor*, 553 U.S. at 894 (recognizing that "nonparty preclusion may

be justified based on a variety of pre-existing substantive legal relationships . . . [including]

---

[9] Marvel Characters, Inc. is indirectly wholly owned by Marvel Entertainment LLC, which is the successor by merger to Marvel Entertainment, Inc., formerly known as Marvel Enterprises Inc. *See* Appellees' Rule 26.1 Disclosure Statement, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. Jan. 13, 2012) (No. 11-3333), ECF No. 47.

12

assignee and assignor") (internal quotation marks and citation omitted).  Simply put, SLMI had

nothing meaningful to convey to AMT and AMT cannot defend this action by (or predicate its

counterclaim on) asserting rights that SLMI itself cannot assert.  To conclude otherwise would

be to permit SLMI to achieve indirectly what it has been barred from achieving directly: the

ability to commercially exploit copyrights it does not own.  *See* 18A C. Wright, *Fed. Practice &*

*Procedure* § 4462 (to hold otherwise "would be to deny the victor any assurance of repose and

expose every judgment to defeat by simple conveyance").

> 3.      The Instant Suit Involves the Same Cause Of Action As *Abadin I*

*Abadin I* involved the same cause of action at issue here.  Causes of action are the same

for purposes of *res judicata* when they "arise out of the same transaction or occurrence."

*Jackson v. Dow Chem. Co.*, 902 F. Supp. 2d 658, 672 (E.D. Pa. 2012), *aff'd*, 518 F. App'x 99,

102 (3d Cir. 2013).  Just like the claims in *Abadin I*, AMT's counterclaims and SLMI's third-

party counterclaims here are based on SLMI's claim that it has valid copyright ownership claims

arising out of the 1998 Agreement.  *See* AMT Counterclaims ¶¶ 4-5, 31, 33, 40, 43; SLMI

Counterclaims ¶¶ 8-9, 17, 49-50, 55-56; *supra* n.4.  Though AMT and SLMI allege that the relief

sought in *Abadin I* was "solely in connection with three post-1998 characters," AMT

Counterclaims ¶ 17; SLMI Counterclaims ¶ 30, subsequent federal courts have uniformly held

otherwise.  Indeed, Judge Martinez expressly rejected SLMI's contention that *Abadin I* did not

address the characters now at issue, holding that *Abadin I* "involve[d] the issue of whether the

1998 Agreement gave [SLMI] ownership of copyrights to comic book characters created by Lee"

and that "the *Abadin* court determined that [SLMI] was barred from exercising the copyrights

conferred upon it in the 1998 Agreement."  *Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL

4776026, at *4.

As Judge Wilson in the Central District of California observed last year, with every bit as much pertinence here, "the public interest in *res judicata* is at its zenith in this case." *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7.

**B.     Collateral Estoppel Also Bars SLMI's Third-Party Counterclaims and AMT's Counterclaims**

Collateral estoppel (or issue preclusion) is a second, independent bar to SLMI's third-party counterclaims and AMT's counterclaims here.  Collateral estoppel bars successive litigation of an issue of fact or law "even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892.  It applies when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Anspach v. City of Phila.*, 380 F. App'x 180, 183 (3d Cir. 2010).  This case satisfies all four elements.

First, as detailed above, the issue presented by SLMI's third-party counterclaims and AMT's counterclaims is identical to that previously adjudicated in the Dismissed SLMI Cases: whether SLMI, or those acting on its behalf, can assert any rights to the Marvel Characters arising out of the 1998 Agreement. *See supra* at 13-14.  Indeed, as recently as September 2013, Judge Martinez of the District of Colorado dismissed SLMI's claims against Disney as collaterally estopped, holding that the court "cannot allow [SLMI] to re-litigate its claim to ownership of those [Marvel] copyrights" based on the 1998 Agreement. *Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *4.  As Judge Martinez explained, all of the prior actions likewise "involve . . whether the 1998 Agreement gave [SLMI] ownership of the copyrights to comic book characters created by Lee," and "the *Abadin* court determined that [SLMI] was barred from exercising the copyrights conferred upon it in the 1998 Agreement." *Id.*

14

Second, this issue was actually litigated in all four Dismissed SLMI Cases, with vigorous briefing on both sides. *See O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1066 (3d Cir. 1991) ("An issue is 'actually litigated' when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'") (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)). Judge Crotty determined the issue in granting Marvel's motion to dismiss, holding that SLMI's attempt to assert ownership of the Marvel Characters based on the 1998 Agreement was time-barred. *Abadin I*, 2010 WL 1257519, at *6-7; *see also Arena v. McShane*, 150 F. App'x 165, 167 (3d Cir. 2005) ("[A]n issue can be actually litigated 'on a motion to dismiss for failure to state a claim . . . .'") (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)); *Nash v. Jilles*, No. 07-03985, 2007 WL 2844823, at *2 (E.D. Pa. Sept. 28, 2007) (holding that dismissal for failure to state a claim is a final judgment for collateral estoppel purposes). Three subsequent courts likewise rejected SLMI's contention that it owns the Marvel Characters pursuant to the 1998 Agreement. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 2013 WL 4776026, at *4; *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, at *7; *Lee v. Marvel Enters.*, 765 F. Supp. 2d at 456.

Third, the determination that SLMI could not claim ownership of the Marvel Characters was "necessary" to all four prior decisions because it was each court's precise basis for dismissing the action. A determination is "necessary" when the "final outcome hinges on it." *Butler v. Hartlaub*, No. 1:08–cv–02240, 2012 WL 174962, at *4 (M.D. Pa. Jan. 20, 2012) (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)).

Fourth, the interests of both SLMI and AMT were fully represented in the SLMI Dismissed Cases by SLMI, which fought to establish precisely the same copyright ownership rights on which the counterclaims now hinge. *See supra* at 12-13 (detailing SLMI's prior

15

litigation of its purported ownership rights); *supra* at 12-13 (explaining that AMT is the alleged

successor-in-interest to SLMI's ownership rights).  Like *res judicata*, *see supra* at 10-14,

collateral estoppel binds both SLMI and its purported licensee, AMT.

> **C.     SLMI Is an Administratively Dissolved Corporation That Lacks the
> Capacity To License AMT**

SLMI was administratively dissolved under Colorado law in August 2002.  *See* Singer

Decl. Ex. 8.  Thus, it was incapable of issuing a license to AMT.  Under Colorado law, a

dissolved corporation may "not carry on any business except as is appropriate to wind up and

liquidate its business and affairs."  Colo. Rev. Stat. § 7-114-105 (2013); *see also Hoppe v.

Percheron Assocs., LLC*, No. 11-cv-03233-CBS, 2012 WL 3135378, at *6 (D. Colo. Aug. 1,

2012) ("In Colorado, a dissolved corporation cannot conduct business unless it is to wind up or

liquidate.").[10]  Entering into new license agreements is not "winding up."  *See* 19 Am. Jur. 2d

Corporations § 2485 ("[T]he dissolution of a corporation terminates its power to hold property,

and it cannot thereafter receive a grant of property or contract to purchase or convey it.").

Here, AMT alleges that its license to use Spider-Man is "in connection with the sale,

offering for sale, advertising, performance and promotion of *Broadway: Now and Forever*"

(AMT Counterclaims ¶ 33), and that its license to use the Non Spider-Man Characters is "in

connection with stage and theatrical productions" (*id.* ¶ 43).  Neither of these alleged licenses

winds up SLMI's business.  SLMI overstepped the limits Colorado places on dissolved

corporations by purportedly issuing licenses to AMT, and any license purportedly granted by

SLMI would have been void *ab initio* as a result.

---

[10] This winding up includes only: (a) collecting its assets; (b) disposing of its properties that will
not be distributed in kind to its shareholders; (c) discharging or making provision for discharging
its liabilities; (d) distributing its remaining property among its shareholders according to their
interests; and (e) doing every other act necessary to wind up and liquidate its business and
affairs.  Colo. Rev. Stat. § 7-114-105 (2013).

16

### III.   SLMI'S THIRD-PARTY TRADEMARK COUNTERCLAIMS AND AMT'S TRADEMARK COUNTERCLAIMS FAIL TO STATE A CLAIM

SLMI and AMT allege that SLMI owns "trademark rights for Spider-Man" and "trademark rights for the Non Spider-Man Characters."  AMT Counterclaims ¶¶ 32, 42; *see also* SLMI Counterclaims ¶¶ 50, 56.  But they do not specifically *identify* even a single trademark at issue.  Such allegations cannot survive a motion to dismiss. *See Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, No. C-12-3433 SC, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012) (requiring plaintiff to "identify every trademark which was allegedly infringed," and dismissing complaint that "identifie[d] only three of the allegedly infringed marks and [left] Defendant to guess at the others").

Even if SLMI were able to identify particular trademarks that were allegedly transferred in the 1998 Agreement, it would long since have lost any ability to assert them against Marvel. Judge Crotty specifically considered SLMI's trademark claims and dismissed them both because the same vague allegations as to trademarks rights in *Abadin I* were inadequately pled and because "whatever violation is alleged, it occurred no later than October or November, 1998. The application statute of limitations is six years." *Abadin I*, 2010 WL 1257519 at *6. Accordingly, *Abadin I* precludes, as a matter of law, SLMI's trademark claims on *res judicata* grounds and these trademark claims must be dismissed.

### IV.   THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER AMT'S SECOND COUNTERCLAIM BECAUSE THERE IS NO ACTUAL CONTROVERSY OVER THE "NON SPIDER-MAN CHARACTERS"

AMT's Second Counterclaim against Disney and Marvel fails independently for lack of subject-matter jurisdiction under Rule 12(b)(1).  The Second Counterclaim seeks declarations that, pursuant to the 1998 Agreement:  (1) SLMI owns the copyrights in various "Non Spider-Man Characters;" (2)  AMT holds a valid license from SLMI to use the "Non Spider-Man

17

Characters;" and (3) that AMT has no "liability" to Plaintiffs for "use of the Non Spider-Man Characters". *See* AMT Counterclaims ¶¶ 40, 48. The requested declarations would be impermissible advisory opinions: Plaintiffs have not alleged that AMT used any of those characters in *Broadway: Now and Forever*, nor has AMT alleged any plans to use them in the future.

Claims for declaratory judgment require that an "actual controversy" exists between "interested part[ies]." 28 U.S.C. § 2201(a); see also U.S. Const. Art. III § 2 (limiting the jurisdiction of federal courts to "cases" or "controversies"). To determine whether a claim for declaratory judgment presents an actual controversy, the Third Circuit examines: "1) the adversity of the parties' interest, 2) the conclusiveness of the judicial judgment, and 3) the practical help, or utility of that judgment." *Market St. Secs., Inc. v. NASDAQ OMX PHLX LLC*, 900 F. Supp. 2d 529, 533 (E.D. Pa. 2012) (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). To satisfy Article III, the party seeking relief must also be under a substantial and "certainly impending" threat of real harm. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013) (holding that parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *see also Market St. Secs.*, 900 F. Supp. 2d at 533 (finding declaratory judgment action not ripe where no adverse action was yet taken against the plaintiff and plaintiff did not modify his behavior based on the potential claim).

Here, AMT has neither used the "Non Spider-Man Characters" nor alleged *any plans* to use them in the future—let alone the "concrete plans" needed to create an Article III case or controversy. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 302 (3d Cir. 2012) ("'Vague' assertions of desire, 'without any descriptions of concrete plans,' are insufficient to support a

US_ACTIVE:\44368548\15\79593.0037

finding of actual or imminent injury.") (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496

(2009)). Thus, AMT has not pled and cannot plead the "certainly impending" threat of harm

required to satisfy Article III. *Clapper*, 133 S. Ct. at 1151.

## V.   THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER AMT'S SECOND COUNTERCLAIM BECAUSE IT IS COLLUSIVE

Finally, AMT's Second Counterclaim is collusive and must be dismissed. *See Flast v.*

*Cohen*, 392 U.S. 83, 94, 100 (1968) (noting that suits that are "feigned or collusive in nature" fail

to satisfy Article III's "case or controversy" requirement). AMT seeks a declaration of rights to

characters that it has never used and that are not at issue here, based on a license it appears to

have obtained from SLMI *after* Plaintiffs filed this lawsuit. Simply put, AMT is colluding with

SLMI to try and re-litigate the Dismissed SLMI Cases by mimicking SLMI's previous claims

against Disney and Marvel. AMT also asserted a contrived "Third-Party Complaint" against

SLMI, in answer to which SLMI has admitted every factual "allegation" in AMT's pleading.

*See* Third-Party Complaint; SLMI Answer. AMT's conduct demonstrates that it is acting as

SLMI's proxy to re-assert SLMI's precluded ownership claims, despite the lack of any

controversy between AMT and either Disney or Marvel over the rights to these characters. Thus,

AMT's Second Counterclaim should be dismissed for lack of subject-matter jurisdiction under

Rule (12)(b)(1).[11]

---

[11] The same standard applies to AMT's Third-Party "Complaint" against SLMI, which collusively seeks a declaration that SLMI owns the "Non Spider-Man Characters." Third Party Complaint ¶ 49; *see also* SLMI Answer. The Court may dismiss AMT's Third-Party Complaint *sua sponte* for lack of subject-matter jurisdiction. *See Woodruff v. Chesapeake Appalachia, LLC*, No. 3:13-mc-510, 2013 WL 6182379, at *1 (M.D. Pa. Nov. 25, 2013) ("Federal courts have an obligation to address issues of subject matter jurisdiction *sua sponte*.") (citing *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999)).

19

## CONCLUSION

For the foregoing reasons, the time has come for this Court to end once and for all SLMI's vexatious and repeatedly-rejected claims of ownership over the Marvel Characters. Plaintiffs Disney and Marvel respectfully request that: (1) AMT's counterclaims against Disney and Marvel be dismissed in their entirety with prejudice; (2) SLMI's third-party counterclaims against Disney and Marvel be dismissed in their entirety with prejudice; and (3) Defendants' affirmative defenses to the extent they rely on SLMI's purported ownership of Spider-Man be stricken.

Dated: December 20, 2013

By:   /s/ Wilson M. Brown

Wilson M. Brown, III (Pa. ID. No. 25486)
Wilson.Brown@dbr.com

Tonia Ann Patterson (Pa. ID. No. 312851)
Tonia.Patterson@dbr.com

**DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Tel:  (215) 988-2718
Fax:  (215) 988-2757

James W. Quinn (admitted *pro hac vice*)
James.Quinn@weil.com

R. Bruce Rich (admitted *pro hac vice*)
Bruce.Rich@weil.com

Randi W. Singer (admitted *pro hac vice*)
Randi.Singer@weil.com

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

*Attorneys for Plaintiffs Disney Enterprises,
Inc.; Wonderland Music Company, Inc.;
Cameron Mackintosh Ltd.; Marvel Characters,
Inc.; and Music Theatre International, LLC*

US_ACTIVE:\44368548\15\79593.0037