IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., WONDERLAND MUSIC COMPANY, INC., CAMERON MACKINTOSH LTD., MARVEL CHARACTERS, INC., and MUSIC THEATRE INTERNATIONAL, LLC,<br>       Plaintiffs,<br><br>v.<br><br>ENTERTAINMENT THEATRE GROUP d/b/a AMERICAN MUSIC THEATRE, JAMES D. MARTIN, FREDERICK W. STEUDLER, JR., and DWIGHT H. BRUBAKER,<br>       Defendants<br>  and<br><br>STAN LEE MEDIA, INC.,<br>       Defendant/Intervenor.<br><br>_____<br><br>ENTERTAINMENT THEATRE GROUP d/b/a AMERICAN MUSIC THEATRE,<br>       Counterclaim-Plaintiff<br><br>  and<br><br>STAN LEE MEDIA, INC.,<br>       Counterclaim-Plaintiff/Intervenor<br><br>v.<br><br>DISNEY ENTERPRISES, INC.; and MARVEL CHARACTERS, INC.,<br>       Counterclaim-Defendants. | CIVIL ACTION<br>NO. 13-5570 |

## **MEMORANDUM**

**SCHMEHL, J.**                                                                                                           October 29, 2014

      Defendants are a business operating a live-performance theater in Lancaster,

Pennsylvania (American Music Theatre or AMT), and associated individuals. Following

Defendants' exhibition of a stage show entitled *Broadway: Now and Forever*, Plaintiffs brought suit for infringement of their rights to intellectual property used in the show, including characters, songs, and images associated with Spider-Man and other properties.[1] Intervenor Stan Lee Media, Inc. (SLMI), is an entity claiming it owns the rights to Spider-Man under a 1998 agreement between its corporate predecessor and Stan Lee. SLMI entered this dispute by granting AMT a retroactive license purportedly covering AMT's use of Spider-Man in its production, and, by way of an intervenor complaint and counterclaims, SLMI and AMT seek declaratory judgment that SLMI owns the rights to Spider-Man.

These issues have previously been addressed in one form or another by multiple courts around the country. The thrust of Plaintiffs' motion to dismiss the intervenor complaint and counterclaims, and to strike related affirmative defenses, is that SLMI's claim to ownership of Spider-Man is foreclosed by the preclusive effect of those prior decisions, which ruled the statute of limitations barred SLMI's claim to ownership. Generally speaking, SLMI and AMT argue that the prior decisions do not meet the relevant standards for preclusive effect and that in any event the statute of limitations cannot be used to bar claims that are asserted defensively. This Court finds the prior decisions are preclusive. The 2013 decision from the District of Colorado has already determined that the original 2010 decision from the Southern District of New York is preclusive, and the Colorado decision in turn has preclusive effect on this Court's ruling. Further, given the circumstances and subject matter of this case, SLMI's and AMT's defensive postures cannot save their claims: to rule that SLMI owns the rights to Spider-

---

[1] A similar claim based on different intellectual property used in the same show, brought by a different but overlapping group of Plaintiffs, was resolved by the parties. *See The Rodgers & Hammerstein Organization v. Brubaker*, No. 13-5660 (E.D. Pa.).

Man would necessarily go beyond a defensive remedy, and to limit the remedy to truly defensive effect would produce an absurd result. The Court will, therefore, grant Plaintiffs' motion.

Factual and Procedural Background

In 1998, Marvel Comics having terminated his employment, Spider-Man creator Stan Lee entered an agreement for employment and transfer of ownership of characters he created to an entity known as Stan Lee Entertainment, Inc. The parties differ as to whether that agreement transferred only the rights to future creations or also preexisting rights and creations, as well as whether Lee actually owned and could transfer the rights to Spider-Man (the dispute on the latter concerning whether Spider-Man was created as a work for hire and thus was always owned by Marvel). Later the same year, Lee entered a new employment agreement with Marvel and also signed an agreement to transfer certain rights to Marvel, including some relating to Spider-Man. In 1999, SLMI succeeded Stan Lee Entertainment, Inc. In 2001, Lee terminated the 1998 agreement with what had by that time become SLMI (successor to Stan Lee Entertainment, Inc.). In 2009, Disney bought Marvel and made it a subsidiary (as this opinion concerns only the Spider-Man issues, the Court will simply refer to the specific entities Disney Enterprises, Inc., and Marvel Characters, Inc., as Plaintiffs).

There have been several prior lawsuits related to the present matter, leading to four written opinions that must be noted. First, the Honorable Paul A. Crotty of the Southern District of New York heard the case of *Abadin v. Marvel Entm't, Inc.*, 09CIV.0715PAC, 2010 WL 1257519 (S.D.N.Y. Mar. 31, 2010) (Crotty Opinion). Jose

Abadin, SLMI's president and board chair, was one of two plaintiffs that sued Marvel, Stan Lee, and another individual, derivatively on behalf of SLMI. The first count of the suit was for copyright infringement, unfair competition, and declaratory judgment based on SLMI's claim of copyright ownership under the 1998 agreement. *Id.* at *2. Judge Crotty dismissed the case, listing several bases for his decision. *Id.* at *6. He held that the plaintiffs lacked derivative standing because they did not own their shares at the appropriate time. *Id.* at *5. He further held that the copyright claim was time-barred because any action on the 1998 agreement should have been brought within four years and because Lee and Marvel had been openly using the characters at issue all along without paying SLMI for their use.[2] *Id.* at *6.

In *Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d 440 (S.D.N.Y. 2011) (Sweet Opinion), *aff'd*, 471 F. App'x 14 (2d Cir. 2012), Lee sued Marvel regarding his 1998 employment agreement with them; after the Court partially granted both sides' motions for summary judgment, the parties settled and stipulated to dismissal with prejudice. *Id.* at 445. SLMI then attempted to intervene, substitute itself for Lee, and vacate the dismissal. *Id.* at 444. The Court saw this as an attempt to circumvent Judge Crotty's earlier statute of limitations decision. *Id.* at 456. The Court denied SLMI's motions, noting that Judge Crotty's reasoning as to the statute of limitations would apply in the new case as well, that a "determination on the merits in a shareholder derivative action

---

[2] Statute provides a three-year limitation on copyright claims. *See* 17 U.S.C. § 507(b); *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013). Infringement claims can be brought within three years of each new infringing act, but ownership or co-ownership claims "accrue only once, 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.'" *Id.* (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996)). But because ownership is an element of an infringement claim, "an untimely ownership claim will bar a claim for copyright infringement where the gravamen of the dispute is ownership." *Id.* at 1258. So the copyright claim itself was barred by Lee and Marvel's open use for years, and the claim would fail because the basis of SLMI's ownership, a requirement of the claim, was barred by the contract limitations period.

will be res judicata in subsequent actions by the corporation," and that "SLMI's interests were adequately represented in" the case decided by Judge Crotty. *Id.* at 456.

In *Stan Lee Media Inc. v. Lee*, 2:07-CV-00225-SVW, 2012 WL 4048871 (C.D. Cal. Aug. 23, 2012) (Wilson Opinion), SLMI brought suit against Lee and others, again regarding the alleged transfer of copyrights and trademarks in the 1998 agreement. The Court engaged in a res judicata/claim preclusion analysis and determined that Judge Crotty's decision precluded the suit before it. *Id.*

Finally, the Honorable William J. Martinez of the District of Colorado heard *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-CV-2663-WJM-KMT, 2013 WL 4776026 (D. Colo. Sept. 5, 2013) (Martinez Opinion). In that case, SLMI sued Disney for copyright infringement regarding the use of characters it alleges it owns under the 1998 agreement. *Id.* at *1. Disney argued SLMI's infringement claim failed because the prior decisions precluded SLMI from establishing that it owned the copyrights, a necessary element of its infringement claim. *Id.* at *2. Judge Martinez conducted a collateral estoppel/issue preclusion analysis primarily based on Judge Crotty's decision and concluded that SLMI was "precluded from re-litigating the issue of its ownership of copyrights based on the 1998 Agreement" because Judge Crotty had already ruled that issue barred by the statute of limitations. *Id.* at *4.

According to the complaint in the present case, in 2013 AMT presented a stage show called *Broadway: Now and Forever* in its 1500-plus-seat theater. The show was a compilation of music and dance performances from many different preexisting shows, including *Chicago*, *Mary Poppins*, *Mamma Mia*, *CATS*, *Billy Elliot*, *Les Misérables*, *Evita*, *Spider-Man: Turn Off the Dark*, and *The Lion King*, and AMT allegedly used

various copyrighted and trademarked properties in the show and in advertising. At issue in this case is intellectual property associated with *Mary Poppins*, *The Lion King*, and *Spider-Man*.

Based on the alleged infringements, Plaintiffs filed a complaint on September 24, 2013. After the suit was filed, AMT and SLMI entered into an agreement whereby SLMI granted a retroactive license covering AMT's use of Spider-Man. AMT's initial answer to the complaint, filed November 4, 2013, thus included as its First Affirmative Defense an assertion that it had a license from the rightsholder (for Spider-Man only); AMT also raised counterclaims for declaratory judgment that SLMI owns Spider-Man and other Stan Lee characters and that AMT had a valid license. The same day, AMT filed a third-party complaint against SLMI, seeking essentially the same declaratory relief; SLMI answered on December 3, 2013, and raised counterclaims against Plaintiffs. Plaintiffs moved to dismiss the counterclaims of both AMT and SLMI. The parties then determined that the more appropriate way for SLMI and the issues concerning it to enter the case would be intervention by SLMI. AMT dropped the third-party complaint and amended its answer and counterclaims; SLMI dropped its counterclaims against Plaintiff and filed a motion to intervene on January 7, 2014. This procedural situation was discussed at the preliminary pretrial conference, which the Court permitted representatives of SLMI to attend. Plaintiffs did not oppose the motion to intervene, so the Court granted it on February 7, 2014, causing the intervenor complaint to be filed the same day. On February 14, 2014, Plaintiffs moved to dismiss AMT's amended counterclaims, strike certain of AMT's affirmative defenses, and dismiss the intervenor complaint. That motion, on which the Court held oral argument May 15, 2014, is the subject of this opinion.

Discussion

Responding to the parties' arguments, the discussion below first establishes that SLMI is indeed precluded from asserting ownership of Spider-Man and then addresses why the defensive posture of that assertion does not alter that conclusion.

The parties raise both res judicata, or claim preclusion, and collateral estoppel, or issue preclusion.

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Reaves v. Pennsylvania Bd. of Prob. & Parole*, 12-4625, 2014 WL 4058829 (3d Cir. Aug. 18, 2014) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). Put into enumerated elements, claim preclusion requires: "(1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009). Issue preclusion, when broken into elements, requires that: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247-48 (3d Cir. 2010) (quoting *Szehinskyj v. Atty. Gen. of U.S.*, 432 F.3d 253, 255 (3d Cir. 2005)). The Third Circuit expands on these elements by "consider[ing] whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action and whether the issue was

7

determined by a final and valid judgment." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotation marks and citations omitted).[3]

The parties expend much energy debating whether Judge Crotty's decision satisfies these tests for preclusion. But that debate can be short-circuited. The specific issue before this Court is not only whether SLMI's claim to ownership of Spider-Man is time-barred, which might be addressed by analyzing the preclusive effect of Judge Crotty's decision; rather, the specific issue is whether Judge Crotty's decision precludes SLMI's claim in this case, and that issue may be addressed by reference to the other decisions that have already relied on Judge Crotty's opinion, particularly Jude Martinez's decision. That is, the issue before this Court—the preclusive effect of Judge Crotty's decision on SLMI's assertion of ownership—has itself already been decided, and *that* decision is preclusive here.

Judge Martinez's opinion satisfies the requirements of issue preclusion.[4] The issue is identical: "Defendant [Disney] argues that Plaintiff [SLMI] is precluded from re-

---

[3] Because it becomes relevant to the analysis below, it is worth noting that the Tenth Circuit's version of the issue preclusion test applied by Judge Martinez is a bit different. *See* Martinez Opinion at *3. Although that test refers to a final adjudication on the merits, which sounds more like claim preclusion, it is apparent from tracing the case law Judge Martinez cites that this requirement is in keeping with the Third Circuit's reference to determination of the issue being necessary to the decision and consideration of whether there was a final judgment. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992). The Tenth Circuit may be more strict in requiring full identity or privity of the party against whom the doctrine was invoked, though the Third Circuit's requirement that the party was fully represented may simply mean privity, *see E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990) ("The main concern in this case is whether Humphreys was fully represented under the law in the litigation of the identical issues decided in Benson. In other words, was Humphreys in privity with Benson."), which "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *See id.* (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950), *cert. denied*, 340 U.S. 865 (1950)).

[4] The same is likely true of Judge Sweet's and Judge Wilson's decisions, but the Court finds that going through the inquiry once is sufficient, and Judge Martinez's decision makes for the simplest analysis because it applies issue rather than claim preclusion and most clearly involves the same issue and parties.

litigating the issue of its ownership of the copyrighted comic book characters based on the 1998 Agreement, because that issue has been decided against Plaintiff is several prior cases," and "[t]he relevant case for the identicality of issues analysis here is" Judge Crotty's decision. *See* Martinez Opinion at *2-3. The issue was actually litigated, as it is clear that briefing on Disney's motion to dismiss addressed several arguments, including that "Plaintiff [SLMI] cannot prove its ownership of the copyrights because it is barred from re-litigating that issue due to issue preclusion." *Id.* at *2. The issue was necessary to the decision, as Judge Martinez addressed only personal jurisdiction and issue preclusion, accepting SLMI's position on jurisdiction for purposes of the motion and "ultimately find[ing] that dismissal is warranted based upon issue preclusion." *Id.* Finally, SLMI was fully represented in the action decided by Judge Martinez because it—not a predecessor, not shareholders, but SLMI itself—was the plaintiff in that case. SLMI clearly had a full and fair opportunity to litigate the issues, including the issue of whether it had been properly represented in the prior case heard by Judge Crotty; this is important to note, because SLMI apparently failed to "contest that it was a party to [that] case." *Id.* at *3. Thus SLMI is precluded from relitigating the question of whether Judge Crotty's decision precludes its ownership assertion.

The Court is confident the above short-circuiting is more than just sleight-of-hand and obviates any need to directly analyze the preclusive effect of Judge Crotty's decision, but it is worth noting that the Court also tends to agree with Judge Martinez's conclusion. The same underlying issue presented here, SLMI's assertion of ownership based on the 1998 Agreement, was at issue in Judge Crotty's decision; while Count I in the original case was for copyright infringement rather than ownership, ownership is a fundamental

9

element of an infringement claim, *Brownstein v. Lindsay*, 742 F.3d 55, 77 n.16 (3d Cir. 2014), and it is clearly ownership that Judge Crotty addressed.[5] Further, the issue was actually litigated; as Judge Crotty notes, the parties in his case even offered arguments specifically about the statute of limitations problems with the ownership assertion. *See* Crotty Opinion at *6 n.5. The time-bar issue was also a necessary part of Judge Crotty's decision. The lack of derivative standing did not trump all other bases for the decision or even necessarily dispose of the entire case. The derivative standing issue was based on the plaintiffs not having acquired their shares until 1999, meaning they could not sue on issues more directly tied to the 1998 Agreement because the wrong occurred before they owned shares. *See id.* at *5. But because continuing copyright infringement can retrigger the limitations period, *see William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009), the derivative plaintiffs might well have had standing to sue for later infringement—except that, as one of the multiple bases for his ruling, Judge Crotty found that the ownership issue (crucial to an infringement claim) was time-barred. Judge Wilson certainly agreed that the statute of limitations was an essential ingredient of the ruling: "The court proceeded, however, to reject the plaintiffs' claims on the merits— primarily on the bases of the applicable statute of limitations." *See* Wilson Opinion at *2. Whether SLMI was fully represented in the original case is somewhat more questionable. Here the short-circuiting does provide cover; as noted above, SLMI did not challenge its representation in the original case when it litigated the issue before Judge Martinez, though it surely could have. Likewise, Judge Sweet has already decided that "SLMI's interests were adequately represented in" the case before Judge Crotty, *see* Sweet

---

[5] Judge Martinez states at least seven times that the issue in the original case was *ownership of the copyrights*, and this Court agrees. *See* Martinez Opinion at *3-4.

10

Opinion at 456, as did Judge Wilson with extensive analysis, *see* Wilson Opinion at *4-7. In any event, though Judge Crotty found the derivative plaintiffs lacked standing in at least some respects, their interest in asserting ownership and overcoming the statute of limitations was in line with that of SLMI itself. Further, a plaintiff in the original case, Jose Abadin, is SLMI's president and board chair and appears to have signed the purported license to AMT, a relation close enough to render preclusion reasonable. As for AMT, the contractual relationship with SLMI represented by the license is sufficient; moreover, even if only SLMI could be strictly precluded, its inability to assert ownership of Spider-Man fatally undermines AMT's counterclaims and related defenses on their face, which warrants dismissal and striking.

None of the equitable exceptions AMT cites work against preclusion in this case. *See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002); Restatement (Second) of Judgments § 28 (1982). AMT's suggestion that the claims are substantially unrelated is belied by the Restatement's own commentary as to when claims are "closely related—for example, when they involve asserted obligations arising out of the same subject matter." § 28 cmt. b. Here, the Court is easily satisfied that the claims clearly deal with the same subject matter and that it would be "unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy." *Id.* And although the burden of proving ownership is now on Plaintiffs rather than SLMI or AMT, Judge Crotty's decision on the statute of limitations was not a burden-of-proof-based determination like a failure to establish lack of contributory negligence, *see id.* at cmt. f, illus. 10; rather, the time bar was clear on the face of the complaint. The argument that there is a need to

relitigate to protect third parties is also unreasonable. AMT says the impact on third parties is that "Disney and Marvel will be able to continue to assert their non-existent rights…to the detriment of third parties and the public interest." AMT Brief at 18. But a different outcome of relitigating ownership would only shift rights between Plaintiffs and SLMI; it is no detriment to third parties that they have to deal with Plaintiffs rather than SLMI. Finally, it must be remembered that these are *equitable* exceptions, and there is no sense of equity weighing against preclusion in this case, where SLMI has forced repeated litigation across the country and "the public interest in *res judicata* is at its zenith." Wilson Opinion at *7.

Given the second-order preclusive effect of Judge Martinez's decision (i.e., his decision on preclusion is itself preclusive) and the Court's basic agreement as to the *issue*-preclusive effect of Judge Crotty's decision, there is no need to address *claim* preclusion and the additional arguments on that topic, such as whether the declaratory judgment regarding ownership sought here is the same as the claims in the prior cases or whether a statute of limitations ruling is a judgment on the merits.[6]

The Court must, however, address the argument that the statute of limitations cannot be used to bar a defense. It is true as far as it goes that "[t]he law is well settled that limitations do not normally run against a defense." *Luckenbach S. S. Co. v. United States*, 312 F.2d 545, 552 (2d Cir. 1963). The purpose of statutes of limitations is to bar untimely suits, but the underlying right that can no longer be pursued affirmatively is not strictly extinguished and, when a suit is otherwise timely, it may still be asserted as a

---

[6]On this last issue, AMT and SLMI cite *Semtek International Inc. v. Lockheed Martin Corp.* 531 U.S. 497, 501-03 (2001) (holding that not every judgment considered "on the merits" has claim-preclusive effect). But post-*Semtek* cases still indicate that "[a] dismissal on statute of limitations grounds is a dismissal on the merits for res judicata purposes." *Taggart v. Chase Bank USA, N.A.*, 375 F. App'x 266, 268 (3d Cir. 2010) (citing *Elkadrawy*, 584 F.3d at 173).

12

defense. *See United States v. W. Pac. R. Co.*, 352 U.S. 59, 72 (1956) ("To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation."). This reasoning has been raised in the copyright context. *See Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006) (finding the statute of limitations did not bar a suit seeking declaratory judgment that plaintiff was the sole owner of certain copyrights because "declaratory judgments typically are sought by potential defendants" to head off opponents' claims); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 163 (2d Cir. 2003); 1-12 Nimmer on Copyright § 12.05. "A potential defendant is not required to seek at the earliest opportunity a declaration that a defense to a claim not yet brought is valid, *Pritchett*, 473 F.3d at 220, and "it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law," *W. Pac. R. Co.*, 352 U.S. at 72.

Nevertheless, the occasion of one being sued (and, it should be noted, SLMI was not sued but rather has intervened) does not give a defendant an unlimited opportunity to pursue claims that are otherwise foreclosed by the passage of time. This clearly cannot be the law. There is a difference between bringing a claim and asserting an issue as a defense, a difference that defines what it means to be "a defendant who is *not seeking any affirmative relief* and who *asserts a defense only to defeat plaintiff's claim*." *Pritchett*, 473 F.3d at 220 (emphasis added). The cases referenced in *Luckenbach* demonstrate the limited, defensive fashion in which otherwise untimely issues may be raised defensively.

In *Hill v. Hawes*, 144 F.2d 511 (D.C. Cir. 1944), a debtor sought cancellation of an obligation that carried a usurious interest rate; the obligation had not been paid in full, but the debtor had paid more than the amount that would have been due at a lower, legal interest rate. *Id.* at 513. Because of the varying statutes of limitations, the debtor could no longer sue to recover the usurious payments, but the lender could still have sued on the note itself. *Id.* The court held that the claim of usury, while barred as an affirmative claim, could still be raised as a defense to defeat the debtor's obligation on the note. *Id.* Most important for present purposes, the court explained that "[t]he one-year statute of limitations [on usury] does, however, apply to the recovery of any payments made by plaintiff's intestate in excess of the amount necessary to extinguish the note." *Id.* In simple terms, assume party A charges party B $10 for some service; that price is illegal, so B is only legally obligated to pay $5, but as it happens B actually pays $6. Suit for the overcharge is time-barred, but a suit on the obligation itself is not. If A sues B for the remaining $4, B can raise the overcharge as a defense and defeat A's claim. But even though A filed the suit, meaning the issues are not wholly stale, it is still too late for B to recover the $1 he overpaid. (The reasoning is the same if B is actually the one who brings suit for a declaration that he does not owe the remaining $4; he can get that declaration, but he cannot get back his extra dollar.)

In *Williams v. Neely*, 134 F. 1, 12-13 (8th Cir. 1904), the court held that the remaining payment on a note related to the sale of land could be blocked by the seller's failure to convey title free of encumbrances as covenanted, even though an affirmative suit for breaking the covenant may have been time-barred, because the breach of the covenant was asserted as recoupment or reduction rather than as a set-off or

14

counterclaim. A buyer/borrower in that situation ordinarily "may pay the purchase price and bring his action on the covenant, or he may reduce the vendor's recovery for the purchase price by the amount of the diminution of the value of the title on account of the defect in it," but as a defense allowed despite the time-bar, he could really only do the latter. *Id.* at 6. Because it was understood that the encumbrances on the property reduced its value by approximately the same amount as the balance of the note, *id.* at 4, there was no discussion of any overage, but presumably the buyer would no longer have been able to sue to recover an amount exceeding the remainder of the note even if the encumbrances reduced the value by more than that amount. This distinction is drawn by the authority cited within *Williams*: recoupment for breach of warranty as a defense to suit on a note "is clearly distinguishable from an independent action for the breach of warranty, or an affirmative claim for damages by reason thereof *in excess* of plaintiff's claim." *C. Aultman & Co. v. Torrey*, 57 N.W. 211, 212 (Minn. 1893) (emphasis added); *see also Rosborough v. Picton*, 34 S.W. 791, 793 (Tex. Civ. App. 1896) (the statute of limitations does not bar a defense to a suit for purchase money that has not yet been paid; "[i]f, however, the purchase money has all been paid, and a suit is necessary to recover it, the statute, of course, runs, as it does against any other cause of action").

    Here, SLMI and AMT argue they can assert SLMI's ownership of Spider-Man as a defense to Plaintiffs' infringement claim, but what they actually seek is a declaration that SLMI owns the Spider-Man copyright. Such a declaration would most definitely go beyond a defensive assertion and provide SLMI with the affirmative relief it has been seeking unsuccessfully all these years. Limited to pure defense, SLMI's claim of ownership would only protect it from paying for infringement, much as parties in the

15

cases cited were protected from paying the remaining amounts due on notes. A declaration that SLMI—and not Disney or MCI—owns Spider-Man would additionally let it go forth and produce or license Spider-Man projects of its own as well as strip that right from Plaintiffs, the very affirmative relief that has been barred by the statute of limitations. That would give SLMI more than just a defense against infringement claims; it would in fact give it everything the statute of limitations had barred, and thus is not a proper application of the doctrine that time-barred claims may be asserted defensively.[7] Giving back the entire opportunity to claim ownership would seriously undermine the statute of limitations because any party in SLMI's position could exploit copyrighted property, tempting the recognized owners to sue, knowing that the otherwise-barred claim of ownership could then be relitigated defensively and fully revived.

Properly limiting SLMI's assertion of ownership to defensive effect is either impossible or untenable. Consider a holding that, while SLMI does not "own" Spider-Man, it may nevertheless assert ownership defensively to remain exempt from paying Plaintiffs for any infringement. Such a result would still allow SLMI to exploit the Spider-Man property, secure in the knowledge that it cannot be sued for infringement, which is inherently much more than defensive use. Indeed, it really does amount to a declaration of SLMI's ownership. The only difference would be that if SLMI could use its alleged ownership as a defense to infringement actions but could never affirmatively

---

[7] This application of the defensive assertion principle to copyright may seem somewhat inconsistent with *Pritchett*, but although that case is useful as a recitation of the principle in the copyright context, the case is really more about discovery rule tolling than about defensive assertion. *Pritchett*, 473 F.3d at 220 ("Pritchett was not aware of and the claim did not accrue until the Pound estate first asserted accounting claims."); *see also* 1-12 Nimmer on Copyright § 12.05 ("[T]he Sixth Circuit's actual holding [in Pritchett] was far less categorical—it apparently rejected operation of the statute of limitations on the basis that the plaintiff's authorship claim did not accrue until the year before it filed suit."). Because the party bringing suit for a declaration of ownership, Pritchett, was already the recognized owner, there was simply no reason to bring suit earlier, and a declaration of ownership would not give Pritchett back anything he had lost through the passage of time.

assert its ownership (as it would have to do in an infringement suit against Plaintiffs), *both* SLMI and Plaintiffs would be able to produce works using the Spider-Man copyright. Plaintiffs could sue other, third-party infringers, but never SLMI or its licensees. SLMI could use Spider-Man, but never prevent anyone else, Plaintiffs included, from making use of the property. Of course, if SLMI chose to offer licenses to all targets of Plaintiffs' infringement suits, as it has in this case, Plaintiffs might wind up unable to sue anyone either, but they could still exploit Spider-Man themselves and never be stopped by SLMI. All of these results are absurd, and similarly confusing potential outcomes based on "highly idiosyncratic" fact patterns have left this area of the law unsettled. *See* 1-12 Nimmer on Copyright § 12.05.[8] Given the value of repose in the copyright system, *see Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir.1996); *Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996), and under the circumstances of this case, the only legally correct and sensible conclusion is that the claims of SLMI and purported licensee AMT are not rescued from the statute of limitations by their ostensibly defensive posture.

Because prior decisions preclude SLMI and AMT from pursuing a claim that SLMI owns the rights to Spider-Man—or any defenses based on such a claim—the Court

---

[8] As Nimmer notes, this uncertainty touches on the possible applicability of adverse possession to copyright, a possibility that apparently leaves AMT aghast. *See* 1-12 Nimmer on Copyright § 12.05. Certainly, some courts have held adverse possession inapplicable to copyright. *See Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 634-37 (D. Md. 2006); *Picture Patents, LLC v. Terra Holdings LLC*, 07 CIV. 5465 JGK/HBP, 2008 WL 5099947 (S.D.N.Y. Dec. 3, 2008). *But see Gee v. CBS, Inc.*, 471 F. Supp. 600, 653-55 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979); *Modeliste v. Sehorn*, 2007-0297 (La. App. 4 Cir. 10/22/08) (noting that *proof* of adverse possession is more difficult for intangible property in the context of assuming the state's prescription statute did apply to music rights). But like the court in *Zuill*, this Court finds adverse possession or at least the similar reasoning discussed above appropriate and useful in sorting out the odd interplay between infringement claims, ownership claims, and the statute of limitations:
> "Copyright, like real estate, lasts a long time, so stability of title has great economic importance. The Supreme Court has reminded us that Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership. Because copyright ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible."

*See Zuill*, 80 F.3d at 1370 (internal citations and quotations omitted, alteration in original).

will dismiss all such claims and defenses[9] as set forth in the accompanying order.

---

[9] The Court will not strike the First Affirmative Defense in its entirety as Plaintiffs request. As amended, the defense asserts only that Plaintiffs do not own the rights to Spider-Man, not that SLMI owns them. As the accompanying order states, AMT's defenses are stricken to the extent they rely on an assertion that SLMI owns the rights to Spider-Man. AMT may not make that assertion, but may theoretically deny Plaintiffs' ownership on some other basis, and it is still of course Plaintiffs' burden to establish ownership as an element of their infringement case.